**Norman LEVINSON et al., Appellants,**

**v.**

**Gene C. SLATER and Bill J. Johnson, Appellees.**

**No. 1233.**

Court of Civil Appeals of Texas, Corpus Christi.

April 13, 1978.

---

338

Larry G. Myers, Byrnes, Myers, Adair, Campbell & Sinex, Houston, for appellants.

Stanley C. Woods, Miller B. Walker, Jr., Houston, Ken D. Lipscombe, Wharton, for appellees.

## OPINION

YOUNG, Justice.

In this venue case, appellants, defendants below, Norman Levinson, Virginia Levinson, Ka-Hugh International, Inc., and Ka-Hugh Enterprises, Inc., were sued by appellees, plaintiffs below, Gene C. Slater and Bill J. Johnson to recover from appellants' overriding royalty interests in certain oil and gas leases. Appellants filed a plea of privilege to be sued in the county of their residence and appellees controverted asserting the suit should remain in Wharton County, Texas, where the disputed leases were located, under Tex.Rev.Civ.Stat.Ann. art. 1995(14) (1964).[1] After a hearing the District Court overruled appellants' plea.

■ Findings of fact and conclusions of law were not filed nor need they be filed in a plea of privilege case. See Rule 385(e), T.R.C.P. Where they are not filed, the judgment may be affirmed if there is sufficient evidence to support it upon any lawful theory. Every issue sufficiently raised by the evidence must be resolved in support of the judgment. *Holiday Lodge Nursing Home, Inc. v. Huffman*, 430 S.W.2d 826 (Tex.Civ.App.—Texarkana 1968, no writ); *Bryant v. Kimmons*, 430 S.W.2d 73 (Tex. Civ.App.—Austin 1968, no writ).

Appellants bring forward a single point in which they allege the trial court erred in denying their plea of privilege because appellees failed to comply with or show themselves within the provisions of Article 1995 Subdivision 14.

■ The venue facts under Subdivision 14 are: 1) the nature of plaintiff's claim and 2) the location of the land. *Edgar v. Bartek*, 507 S.W.2d 831 (Tex.Civ.App.—Corpus Christi 1974, writ dism'd). There is no dispute that the leases in question are located on land in Wharton County, Texas. Thus, appellees need only show that the nature of their claim comes within the terms of the exception. *Edgar v. Bartek*, supra.

■ The record on appeal includes the transcript and a 47 page statement of facts with attached exhibits. For purposes of determining the nature of the suit, though, we look only to the facts alleged in appellees' petition, the rights asserted, and the relief sought. *Renwar Oil Corporation v. Lancaster*, 154 Tex. 311, 276 S.W.2d 774 (1955); *Edgar v. Bartek*, supra.

The pertinent allegations of appellees' second amended original petition appeared as follows:

### II.

"On November 28, 1973, Plaintiffs acting as joint venturers entered into an oral agreement with Defendants Norman Levinson and wife, Virginia Levinson, individually; and Defendant Norman Levinson as President of Defendant corporation, Ka-Hugh International, Inc., and Ka-Hugh Enterprises, Inc., whereby Plaintiffs were to furnish geological work already done by them and were to do any necessary additional geological work on an area of oil and gas development commonly referred to as the 'Hlavinka Area', located in Wharton County, Texas, and more particularly shown on a Plat attached hereto as Exhibit 'A' and incorporated herein for all purposes. The terms of said agreement were as follows:

(a) Defendant Norman Levinson, either through himself or his companies would pay all additional acreage costs on the basis of $25.00 per acre and pay all lease renewal costs.

(b) Defendant Norman Levinson, or Defendant corporations would pay Plaintiffs $20,000.00 for professional services. ($8500.00 to be paid on or before January 15, 1974, and the remaining $11,500.00 to be paid after first well was drilled on the herein described property).

---

1. All statutory references are to Vernon's Civ.Stats.Ann. unless otherwise noted.

(c) Defendant Norman Levinson, individually and through his companies, for geological services performed by Plaintiffs would assign to Plaintiffs an overriding royalty equal to 13.3% of all oil, gas and other minerals produced from the oil, gas and mineral leases which Plaintiffs had in part already acquired and all remaining acreage acquired by and through the efforts of Plaintiffs or acquired and/or renewed by Defendants in the area outlined on Exhibit 'A' attached hereto.

(d) Plaintiffs were to drill a well in the name of Vantage Independent Petroleum Company to test the Yegua formation to a depth of 7800 or 7900'. Defendants agreed to raise all money for drilling such well and place the drilling funds in escrow to pay all drilling and completion costs.

(e) Any new leases, top leases, renewals, or assignment from third parties of acreage under lease taken in this area of common interest by Defendants or anyone acting for them would be subject to assignment to Plaintiffs of 13.3% overriding royalty interest as provided in Paragraph II(c). After this agreement was consummated, Plaintiffs furnished Defendant Norman Levinson all geological information on the herein described property in the form of a selling brochure which included maps, reports, logs and copies of leases, and shortly thereafter Plaintiff Gene C. Slater went with Defendant Norman Levinson to Chicago and on numerous other trips for the purpose of selling working interests in the lease. Defendant Norman Levinson informed Plaintiffs by telephone on December 26, 1973, that he had sold ¼ of the interest but did not have $8500.00 cash which was due and owing to Plaintiffs on January 15, 1974. Plaintiffs granted Defendant Norman Levinson additional time and thereafter on February 8, 1974, Defendant Norman Levinson paid Plaintiffs $4500.00 by and through his company, Ka-Hugh International, Inc., leaving a balance of $15,500.00 owed to Plaintiffs.

\* \* \* \* \* \*

III.

On October 16, 1975, Defendant Norman Levinson initialled an agreement incorporated and made a part of this pleading and marked Exhibit 'B', whereby he agreed in lieu of any further cash consideration to pay to Plaintiffs a reduced royalty of 8.888% of ⅝ of all oil, gas and other minerals produced by virtue of oil, gas and mineral leases herein described, but would release and assign to Plaintiffs all minerals below 100 feet below production from the first well. After the October 16, 1975, agreement, Plaintiffs relied solely upon the Defendants to proceed to renew the leases and drill a well on said lease to a depth of 7800' or through the Yegua formation, whichever is the lesser depth. Prior to drilling of the first well Defendants were to assign to Plaintiffs a 8.888% Overriding Royalty and 100% of all minerals below 100' below production from the first well.

IV.

The Bratcher No. 1 Well was drilled by Defendants on said leases and a log was run on approximately January 7, 1976. Production from said well was commenced in May, 1976, and such well is still producing. Therefore, the Plaintiffs seek under the aforementioned contract which would be the delivery by Defendants to Plaintiffs of an assignment of an overriding royalty of 8.888% of ⅝ of the oil, gas and other minerals in and under the herein described leases, or any others obtained in the area of interest described by Exhibit 'A' attached hereto, and a release and assignment to Plaintiffs of all minerals in said leases, or any others obtained in the area of interest described by Exhibit 'A' attached hereto, below 100 feet below production from the Bratcher No. 1 Well, or in the alternative judgment against Defendants for value of said Plaintiffs' services in the amount of 8.888% of ⅝ of all oil and gas produced by virtue of said leases described herein, and the assignment by Plaintiffs of all minerals below 100 feet below production from said first well, which is the reasonable value of such services.

## V.

The agreements and understandings between Plaintiffs and Defendants, as referred to in Paragraph II and III above, constituted a joint venture to use their joint and best efforts to obtain the mineral development in the area covered by the leases hereinafter set out in Paragraph VII. By the terms of such agreement and understanding set forth in Paragraph III, Plaintiffs were to receive Overriding Royalty equal to 8.888% of ⅜ths of all the oil, gas and other minerals produced from such leases and Plaintiffs would have released and assigned to them by Defendants all minerals below 100 feet below production from the first well drilled on such leases. Defendants used the knowledge which they obtained in the joint venture to acquire said leases and drill the herein referred to Bratcher # 1 Well. Defendants actions as herein set forth constituted a breach of the confidential relationship between Plaintiffs and Defendants and was a fraud upon Plaintiffs. There existed between Plaintiffs and Defendants a relationship of trust and confidence and the leases acquired by Defendants inured to the benefit of both Plaintiffs and Defendants, and an overriding royalty of 8.888% in the minerals in and under the leasehold estates covered by such leases and 100% of all minerals below 100 feet below production from the Bratcher # 1 Well are held by Defendants as constructive Trustees for the benefit of Plaintiffs, and Plaintiffs by this action seek to establish and enforce their equitable title to such interest in said land.

## VI.

\*    \*    \*    \*    \*    \*

That as above alleged Plaintiffs are owners of an overriding royalty equal to 8.888% of ⅜ths of all oil, gas and other minerals produced under and by virtue of the oil, gas and mineral leases more particularly described as follows and are the owners of 100% of the minerals below 100 feet below production from the said Bratcher # 1 Well.

There follows in plaintiffs' petition descriptions of seven oil, gas and mineral leases, dated in 1974 and 1975, on land in Wharton County.

■ A suit for specific performance of a contract to assign an interest in land is not within Subdivision 14 of Article 1995. *Calvert v. Greene*, 326 S.W.2d 592 (Tex.Civ. App.—San Antonio 1959, no writ); *Milburn v. Minette*, 278 S.W.2d 269 (Tex.Civ.App.— El Paso 1955, no writ); *Edgar v. Bartek*, supra. But a suit claiming equitable title to land by means of a constructive trust comes within Subdivision 14. *Carstairs v. Bomar*, 119 Tex. 364, 29 S.W.2d 334 (Comm'n App.1930, opinion adopted); *Edgar v. Bartek*, supra.

Appellants direct our attention to paragraphs II(c) and (e), III, IV, and the statements concerning appellees' right to have an "assignment" of or to "be assigned" an overriding royalty and all minerals below 100 feet below production from the first well. They contend the statements show the primary purpose of the suit to be one for specific performance of a contract to convey an interest in land, and thus that such a suit does not come within the purview of Subdivision 14.

■ Upon reviewing the allegations of appellees' petition we find that the primary nature of this suit is not one for specific performance of a contract. Rather we find the allegations show that the primary purpose of the suit is to establish, through a constructive trust, an equitable title to an 8.888% overriding royalty in the minerals in the leasehold estates covered by such leases and 100% of all minerals below 100 feet below production from the first well drilled on the land covered by the mineral leases involved, and all mineral interests below 100 feet below production of the Bratcher # 1 Well.

■ A primary circumstance from which the law will raise a constructive trust is the breach of a confidential relationship. *Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557 (1962). Appellees' petition specifically avers not only that "there existed

between plaintiffs and defendants a relationship of trust and confidence" (Paragraph V.) but also that the parties took several trips together jointly promoting the leases; that each had an investment in the business which by their joint efforts they were seeking to protect; that appellees were willing to trust appellants' judgment in executing new leases and renewing old ones; and that appellees freely extended the payment schedule for certain debts owed by appellants to appellees. See *Minton v. Stewart*, 359 S.W.2d 925 (Tex.Civ. App.—Eastland 1962, no writ).

Furthermore, appellees allege in Paragraph II that the parties were working as joint venturers. This relationship can give rise to a constructive trust. *Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401 (1960). Moreover, appellees assert in Paragraph V that appellants' actions constituted a fraud. Fraud also may give rise to a constructive trust. *Gourley v. Fields*, 348 S.W.2d 787 (Tex.Civ.App.—Eastland 1961, no writ); *Brown v. Gilmore*, 267 S.W.2d 908 (Tex.Civ.App.—El Paso 1954, writ dism'd). Finally, appellees assert in Paragraphs II and VI that several leases were executed subsequent to appellees giving the geological information to appellants. Use of a confider's knowledge or information by a confidant who stands in confidential relationship may give rise to a constructive trust. *Smith v. Bolin*, 153 Tex. 486, 271 S.W.2d 93 (1954). Restatement of the Law, Restitution Chap. 12, § 200 (1937).

We recognize that the nature of a suit is to be determined by the "facts" alleged in the petition, *Edgar v. Bartek*, supra, and that it might be asserted that some of the above allegations supporting our decision are in the nature of conclusions. But challenges to the legal sufficiency of the allegations in the petition which are incorporated in the controverting affidavit should be made by special exceptions. This then gives the plaintiff an opportunity to amend his pleadings if they are not specific enough. *Crim v. Logan*, 277 S.W.2d 298 (Tex.Civ.App.—Waco 1955, no writ);[1] 1 McDonald, Texas Civil Practice §§ 4.49, 4.51 (II) (1962). Appellants' failure to so except in the instant case constituted a waiver of such deficiencies for purposes of venue. *Cactus Drilling Corporation v. Hager*, 487 S.W.2d 758 (Tex.Civ.App.—El Paso 1972 no writ); *Great Southwest Life Insurance Company v. Camp*, 464 S.W.2d 702, 704 (Tex.Civ.App.—Fort Worth 1971, no writ); 1 McDonald, Texas Civil Practice § 4.49 n. 38 (1962). Consequently, the Court will construe the allegations liberally and indulge every reasonable intendment to sustain the controverting plea. *Strickland Transportation Company v. Carmona*, 303 S.W.2d 851 (Tex.Civ.App.—Waco 1957, no writ), 1 McDonald, Texas Civil Practice § 4.49 n. 37 (1962).

Accordingly, we find the nature of appellees' suit to be one asserting an equitable title which comes within Subdivision 14.

The judgment of the trial court is affirmed.