**GULF INTERSTATE ENGINEERING COMPANY, Appellant,**

v.

**PECOS PIPELINE AND PRODUCING COMPANY, Appellee.**

No. 01–84–00275–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 18, 1984.

Rehearing Denied Nov. 21, 1984.

Richard H. Page, Vinson & Elkins, Jeff Crane, Vinson & Elkins, Houston, for appellant.

Glenn A. Ballard, Jr., Bracewell & Patterson, Houston, for appellee.

Before WARREN, LEVY and COHEN, JJ.

## OPINION

COHEN, Justice.

This is an accelerated appeal from the district court's interlocutory order staying arbitration, pursuant to Tex.Rev.Civ.Stat. Ann. arts. 225, 238-2(A)(2) (Vernon 1973), and denying Gulf's motion to stay litigation and compel arbitration, pursuant to a contractual arbitration provision. No findings of fact or conclusions of law were filed by the trial judge, despite Gulf's request, and none are required under Tex.R.Civ.P. 385(b).

Pecos, the owner of a pipeline, contracted with Gulf to operate the pipeline and perform all necessary engineering services. The first contract between the parties was made in December, 1982, and contained no arbitration provision. The second contract, which is the subject of this appeal, was dated February 18, 1983, and contained an arbitration clause which provided that:

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall, if not settled by mutual agreement of the parties, be settled by arbitration in accordance with the Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Arbitration proceedings here-

under shall be conducted in Houston, Texas.

The contract provided that it should be governed by Texas law, and, on its first page, it stated, *"THIS CONTRACT IS SUBJECT TO ARBITRATION UNDER THE TEXAS GENERAL ARBITRATION ACT"*, as required by Tex.Rev.Civ.Stat. Ann. art. 224-1 (Vernon Supp.1984).

A dispute arose in 1983, and Pecos ceased making payments to Gulf. On November 21, 1983, Gulf sent a demand letter stating that if the claim was not paid within thirty (30) days and if a lawsuit and a judgment resulted, Pecos would be liable for attorney's fees under Tex.Rev.Civ.Stat. Ann. art. 2226 (Vernon Supp.1984). On December 19, 1983, Pecos sent Gulf a notice of its intent to file an action under the Texas Deceptive Trade Practices Act. Gulf then requested arbitration. Pecos rejected arbitration and filed suit in February, 1984, alleging claims for breach of contract and deceptive trade practice.

Gulf then moved that the lawsuit be abated and that all proceedings in the district court be stayed until completion of arbitration. Pecos requested the opposite relief, namely, that the district court order all arbitration proceedings stayed until completion of litigation in the district court.

The court granted all relief sought by Pecos and denied all relief sought by Gulf. It stayed arbitration indefinitely.

The parties vigorously dispute whether this controversy is governed by federal or state law. We find, however, that the relevant provisions of both the federal and state law are very similar.

Article 224 of the Texas General Arbitration Act provides:

A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. A court shall refuse to enforce an agree-

ment or contract provision to submit a controversy to arbitration if the court finds it was unconscionable at the time the agreement or contract was made.

The Federal Arbitration Act, 9 U.S.C. section 2 provides:

A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising of such contract or transaction, or the refusal to perform the whole or any part thereof, or any agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

■ The Texas court "shall proceed summarily" to determine the validity of the arbitration provision, and if the provision is valid, the court shall order arbitration; otherwise, the court may deny the application to compel arbitration and may instead stay arbitration upon a showing that there is no agreement to arbitrate. Article 225, *supra.* Courts are granted similar powers under the Federal Arbitration Act to stay litigation and compel arbitration when appropriate. 9 U.S.C. sections 3 and 4.

Under the Texas Act, it is a defense to the specific enforcement of an arbitration provision that it was unconscionable when made or that other grounds exist at law or in equity for the revocation of the contract. Article 224, *supra.* Under the Federal Act, it is a defense to specific enforcement of an arbitration provision that grounds exist in law or equity to revoke the contract, 9 U.S.C. section 2, and, in addition, an arbitration clause is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion. *Prima Paint Corporation v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967); *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519, fn. 14, 94 S.Ct. 2449, 2457, fn. 14, 41 L.Ed.2d 270 (1974).

Pecos claims that the arbitration provision was unenforceable because it was unconscionable, fraudulently induced, and waived. Therefore, Pecos concludes, the district court properly refused to compel arbitration and stayed arbitration pending litigation.

■ The parties agree that the standard of review in this case is that of "no evidence." We have reviewed the record to determine if Pecos' claims are supported by any evidence. When reviewing legal sufficiency of the evidence, we are guided by established principles. A "no evidence" point presents a question of law requiring the appellate court to consider only the evidence and inferences tending to support the finding under attack and to disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). When, as in the instant case, there are no findings of fact and conclusions of law, we must affirm the judgment if there is sufficient evidence to support it upon any legal theory asserted by the prevailing party, and we must resolve every issue raised by the evidence in support of the judgment. *Lassiter v. Bliss,* 559 S.W.2d 353, 358 (Tex.1977); *Beef Cattle Co. v. Scott,* 613 S.W.2d 318 (Tex.Civ.App.— Amarillo 1981, no writ); *Levinson v. Slater,* 565 S.W.2d 337 (Tex.Civ.App.—Corpus Christi 1978, no writ).

The record does contain some evidence that Gulf fraudulently induced Pecos to include the arbitration clause in the contract. Both contracts were drafted by Gulf; however, only the second contract contained an arbitration provision. The president of Pecos, Stephen Hacker, testified that he signed the contract without consulting his attorney after he was told by Gulf's employee, Mr. Dempsey, that the contract had been approved by Pecos' attorney. The record reflects the following testimony on direct examination by Mr. Hacker of Pecos:

Q: Did you discuss the arbitration provision in that contract with your attorney?

A: No. I did not.

Q: Did you discuss any provisions in the contract with your attorney?

A: No. I did not. Not that I—to the best of my recollection.

Q: Okay. Why not?

A: I was led to believe that you okayed this.

Q: Who led you to believe that?

A: The people at Gulf Interstate, precisely, Mr. Dempsey.

Q: Okay. Did you take any note of the arbitration provision whatsoever?

A: No. Didn't mean anything to me.

On cross-examination, Mr. Hacker was questioned as follows:

Q: Mr. Hacker, was the contract, a copy of which is introduced here as Pecos Exhibit 2, reviewed by your counsel before it was executed?

A: I don't think it was, sir.

Q: Well, do you think your counsel was never given an opportunity to see that contract?

A: My counsel says they never say this contract before I signed it.

Q: Who is your counsel?

A: Mr. Ballard.

Q: And he said he had never seen this contract?

A: That's what he's told me, sir.

Q: Did you ever have a copy of the contract?

MR. BALLARD: Your Honor, I'd have to object to all that because it's going into the attorney/client privilege. Your Honor, I would move to strike that all from the record.

THE COURT: Sustained.

(Cross-examination continues)

Q: Did you have a copy of the contract before it was executed, Mr. Hacker?

A: Did I have a copy? Yes, I did.

Q: Did you take it down to Mr. Ballard and ask him to review it?

A: No, I did not.

John Dempsey, the vice-president of Gulf, later testified at the hearing; he did not, however, deny Hacker's testimony that he had led Hacker to believe that Pecos' attorney had "okayed" the contract.

■ Fraud occurs when a false representation of a material fact is made with intent to induce the listener to act upon it and the listener acts in reliance upon the misrepresentation and suffers injury as a consequence. *Hicks v. Wright,* 564 S.W.2d 785, 791 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.).

■ In reviewing Hacker's testimony under the "no evidence" standard, we consider only the evidence and inferences from it which support the trial court's finding; we disregard all evidence and inferences to the contrary. In this case, Mr. Dempsey testified, but never denied the misrepresentation, nor did any other witness, and, therefore, there is no evidence to the contrary. It is clear from Mr. Hacker's testimony that the representation was made by Mr. Dempsey. Mr. Hacker's testimony that he did not discuss *any* provisions of the contract with his attorney was admitted without objection and from it the court could have inferred that the attorney never "okayed" the contract. Mr. Hacker's later testimony that he did not think the contract was reviewed by his counsel prior to execution and that his counsel said that they never saw the contract prior to execution[1] gives rise to inferences that Mr. Hacker's counsel had not approved the contract. This inference is supported by the fact that Gulf drafted both contracts and that the first did not contain an arbitration clause. The materiality of such a misrepresentation is obvious, and the trial judge could have reasonably inferred that Mr. Hacker relied upon this misrepresentation because he

1. Curiously, this important testimony supporting Pecos, i.e., that Dempsey's statement was false, was brought out by Gulf's attorney, over an objection and motion to strike by Pecos' attorney. The objection was sustained, but the court never ordered that any testimony be stricken from the record. Several questions on the same subject had been asked without objection immediately prior to the objection, and the record does not reflect how much of the prior testimony was included in the objection "to all that". Also, Hacker had testified earlier without objection that he had never discussed any provisions in the contract with his attorney.

signed the contract shortly after it was made. Hacker's testimony that the arbitration clause was not negotiated would be consistent with, and would therefore support, an inference that he agreed to its inclusion based on Dempsey's assertion that Pecos' own attorney had approved it.

The entire testimony on this subject occupies less than three pages of the statement of facts. This evidence, although slight, constitutes more than a scintilla and was uncontradicted. We conclude that the evidence and inferences therefrom support the trial court's implied finding that the arbitration clause was fraudulently induced. All of the appellant's grounds of error are overruled.

The judgment is affirmed.