Don A. WETZEL, Appellant,

v.

SULLIVAN, KING & SABOM, P.C., Appellee.

No. 01–87–00440–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 7, 1988.

Rehearing Denied Jan. 28, 1988.

Opinion on Rehearing March 31, 1988.

JoAnn Storey, Richard Sheehy, Cook, Davis & McFall, Houston, for appellant.

Krist, Kinney, Puckett & Riedmueller, Norman Riedmueller, Mary Riordan, Houston, for appellee.

Before JACK SMITH, LEVY and HOYT, JJ.

## OPINION

HOYT, Justice.

This is an accelerated appeal from an interlocutory order granting an application to stay arbitration proceedings pursuant to Tex.Rev.Civ.Stat.Ann. art. 225, § B (Vernon 1973). Tex.Rev.Civ.Stat. art. 238–2, § A(2) (Vernon 1973), specifically grants to this Court jurisdiction to consider an appeal from an order granting an application to stay arbitration, and such appeal is taken "in the manner and to the same extent as from orders or judgments in a civil action." *See* Article 238–2, § B.

Don A. Wetzel ("Wetzel") was a partner and shareholder in the firm of Sullivan, King & Sabom, P.C. ("SKS"), until his withdrawal from the firm in March of 1985. Because the parties could not agree to the value of Wetzel's stock in the firm and the proper allocation of possible fees from two contingent fee cases, Wetzel filed for arbitration with the American Arbitration Association ("AAA"), pursuant to the terms of the arbitration agreement.

SKS filed this action seeking a declaratory judgment defining the rights and obligations of the parties, and for injunctive relief to prohibit Wetzel from attempting to arbitrate the issues in dispute. The trial court conducted a summary hearing pursuant to article 225, § B, on SKS's motion to stay the arbitration proceedings, and subsequently granted the stay on May 8, 1987. Although Wetzel requested findings of fact and conclusions of law, none were filed, and we conclude that none are required under Tex.R.App.P. 42(a)(1).

At the outset, the parties disagree as to whether the standard of review in this case is "sufficiency of the evidence" or "abuse of discretion." We hold that the standard of review is that of "no evidence." *See Gulf Interstate Eng'g v. Pecos Pipeline,* 680 S.W.2d 879 (Tex.App.—Houston [1st Dist.] 1984, no writ). A "no evidence" point requires the appellate court to consider only the evidence and inferences tending to support the finding under attack and to disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

The trial court is required to proceed "summarily" to determine whether there is

an agreement to arbitrate and may stay arbitration when the moving party establishes that there is no such agreement. Article 225, § B. Texas General Arbitration Act, Tex.Rev.Civ.Stat.Ann. art. 224 (Vernon Supp.1988), provides that:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity from the revocation of any contract.

Article 224–1[1] further provides that:

> No agreement described in Article 224 shall be arbitrated unless notice that a contract is subject to arbitration under this Act is typed in underlined capital letters, or is rubber-stamped prominently, on the first page of the contract.

The record reflects that, at the time of its incorporation, SKS's secretary drafted and prepared a shareholders' agreement and a compensation agreement. These agreements were circulated to all the shareholders, and documents were executed by Mr. Sabom in his individual capacity. He also attested, in his capacity as secretary of the corporation, to the signature of the corporate president, although the president's signature did not appear on the documents. These documents were accompanied by a memorandum that incorrectly stated that each document had been signed on behalf of the corporation. Shareholders were requested to sign the documents and return them to Mr. Sabom.

Both the shareholders' agreement and the compensation agreement provided prominently on their face: NOTICE: THIS AGREEMENT IS SUBJECT TO ARBITRATION UNDER THE TEXAS GENERAL ARBITRATION ACT. Page four of the shareholders' agreement provides:

> Any claim or controversy arising out of or relating to the determination of value under this Article 2, shall, upon the request of either the individual purchasers, the Corporation or the Stockholder (or his representative), be submitted to and settled by arbitration in Houston, Texas, in accordance with the rules of the American Arbitration Association then in effect. Any decision made pursuant to such arbitration shall be binding and conclusive on the individual purchasers, the

Corporation and the Stockholder (or his representative).

The compensation agreement provides, in part, as follows:

> (5). *Arbitration.* Except as herein otherwise provided, any claim or controversy arising out of or relating to this agreement or any breach hereof shall, upon the request of either the EMPLOYER OR EMPLOYEE, be submitted to and settled by arbitration in Houston, Texas, in accordance with the rules of the American Arbitration Association then in effect. Any decision made pursuant to such arbitration shall be binding and conclusive upon the employer and the employee.

However, neither the shareholders' agreement nor the compensation agreement were signed by the president and six of the shareholders. Therefore, SKS asserted, and the trial court found, that there was no written agreement as required by art. 224.

Wetzel asserts that the contracts are valid, even though they were not signed by all parties, because Wetzel signed the agreements, and SKS accepted them through their acts, conduct, or acquiescence in the terms of the contract. *See Valasquez v. Schuehle,* 562 S.W.2d 1, 3 (Tex.Civ.App.—San Antonio 1977, no writ). Moreover, he argues that the evidence conclusively establishes that SKS accepted the terms of the contracts by its acts, conduct, or acquiescence through various letters exchanged between the parties referring to arbitration or to the shareholders' agreement and compensation agreement. As evidence, Wetzel points to the fact that when he left the firm, part of his compensation included a payment of $26,000.

■ Finally, Wetzel contends that in the absence of a verified plea denying the execution of the agreements, SKS cannot contest the validity of the contracts. However, absence of a verification is a defect that is waived if not raised in the trial court. *Galaznik v. Galaznik,* 685 S.W.2d 379, 383 (Tex.App.—San Antonio 1985, no writ).

SKS urges that the instruments were not executed and were not intended to be effective without the signatures of all parties. *See Rea v. Simmons & Simmons Constr. Co.,* 275 S.W.2d 747, 751 (Tex.Civ.App.—San Antonio), *aff'd,* 155 Tex. 353, 286 S.W.2d 415 (1955). Additionally, SKS con-

---

1. Ch. 704, § 2, 1979 Tex.Gen. Laws 1708, *repealed by* ch. 817, § 1, 1987 Tex.Gen. Laws 5670.

tends that it did not ratify the agreements and is not estopped to deny their effectiveness.

Arbitration is generally favored by the courts, and every reasonable presumption will be indulged to uphold arbitration proceedings. *Manes v. Dallas Baptist College*, 638 S.W.2d 143 (Tex.App.— Dallas 1982, writ ref'd n.r.e.); *Carpenter v. North River Ins. Co.*, 436 S.W.2d 549, 553 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). Although an arbitration agreement need not be in any particular form, no party is under a duty to arbitrate unless by clear language he has previously agreed to do so, and it must clearly appear that the intention of the parties was to submit their dispute to arbitrators and to be bound by that decision. *Manes*, 638 S.W.2d at 145.

Even if a written agreement is not executed and no writing exists that satisfies the Texas General Arbitration Act, a common law right to arbitration is enforceable if an appropriate agreement to submit to arbitration is shown. *L.H. Lacy Co. v. City of Lubbock*, 559 S.W.2d 348 (Tex.1977); *Gerdes v. Tygrett*, 584 S.W.2d 350 (Tex.Civ.App.—Texarkana 1979, no writ). Moreover, a party may specifically enforce an arbitration agreement despite the other party's attempted revocation. *Olshan Demolishing Co. v. Angleton Indep. School Dist.*, 684 S.W.2d 179, 184 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

We have reviewed the record to determine whether SKS's claims are supported by any evidence. When, as in the instant case, there are no findings of fact and conclusions of law, we must affirm the judgment if there is sufficient evidence to support it upon any legal theory asserted, and must resolve every issue raised by the evidence in support of the judgment. *See Lassiter v. Bliss*, 559 S.W.2d 353, 358 (Tex. 1977).

The record does contain evidence that the documents were never executed. William Henri, president of SKS, testified that the documents were proposed drafts. The trial court heard conflicting evidence regarding whether all of the shareholders agreed to the provisions in the shareholders' and compensation agreements. The memorandum accompanying the documents stated that once the agreements were signed by everyone, copies would be distributed to all the shareholders. The evidence also revealed that no copies were ever distributed.

Sabom testified that everyone was paid pursuant to the formula or calculation set out in those documents. He also testified that prior to the firm's incorporation, and the preparation of the shareholders' agreement and compensation agreement, an outgoing partner would be paid based upon the exact same formula as recited in the agreements. Although the agreements were used as guidelines, Sabom stated that $26,000 reflected "an amount of money that Wetzel felt like he needed to get his new practice going." Sabom further testified that he told all the shareholders, "probably at the next [shareholders'] meeting," that the documents had not been signed on behalf of the corporation.

Both William Henri, shareholder and president of SKS, and Charles Sullivan, shareholder and director, testified that neither had agreed, orally or in writing, to arbitrate with Wetzel.

In reviewing the testimony under the "no evidence" standard, we initially conclude that the evidence supports the trial court's ruling; however, we are compelled to hold that SKS is estopped from denying the existence of the agreement because it ratified the agreements, as a matter of law.

Ratification occurs when a party recognizes the validity of a contract by acting under it, performing under it, or affirmatively acknowledging it. *United States v. McBride*, 571 F.Supp. 596 (S.D. Tex.1983). The letters exchanged between the parties consistently referred to the agreements: May 3, 1985—"interim payment to you pursuant to Article 3 of Shareholders' Agreement and the remainder—pursuant to the compensation agreement"; June 28, 1985—"Enclosed is preliminary date for your buy-out on: (a) compensation agreement, (b) stock purchase agreement"; February 6, 1986—"That percentage of share ownership was used in arriving at your buy-out price under the Shareholder's agreement...." "The arrangement with respect to the contingency fees is as set out in the compensation agreement...." Moreover, the check paid to Wetzel reflected that payment was being made "per the shareholders' agreement and compensation agreement."

SKS never disputed the validity of the agreements until Wetzel filed for arbitra-

tion. Throughout their two years of negotiation, SKS treated the agreements as though they were in effect. SKS also accepted benefits and issued stock pursuant to the agreements. The record reflects that under the agreements, Wetzel accepted a reduction in his ownership interest. At the time the firm was a partnership, Wetzel was entitled to 12½ percent interest, but under the shareholders' agreement and compensation agreement, his percentage was reduced to 5.51%.

Because SKS accepted the benefits of the agreements and treated the agreements as valid for approximately two years before Wetzel filed for arbitration, we conclude that ratification was established as a matter of law.

Appellant's first point of error is sustained.

The order staying arbitration is reversed, and the parties are ordered to proceed to arbitration under the arbitration agreement.

## ON MOTION FOR REHEARING

On motion for clarification and for rehearing, SKS contends that this Court failed to specify whether arbitration shall proceed under the Texas Arbitration Act or under common law. We grant SKS's motion for rehearing, clarify our prior opinion, but deny all other requested relief. Additionally, in four points of error, SKS contends that this Court erred (1) in failing to fully dispose of all issues raised on appeal; (2) in finding that Wetzel accepted a reduction in ownership interest; (3) in finding that SKS was estopped to deny the existence of the arbitration agreement; and (4) in finding ratification of the arbitration agreement as a matter of law.

This Court held that SKS had treated the agreement as an executed and binding agreement between it and Wetzel and, therefore, was estopped to deny its execution. We reaffirm our holding that there exists a written agreement by estoppel and conclude that it is unnecessary to speak to the issue of whether the agreement between SKS and Wetzel also extends to the remaining shareholders. Arbitration shall proceed under the Texas Arbitration Act. *See* Tex.Rev.Civ.Stat.Ann. arts. 224–249 (Vernon 1973 & Supp.1988).

In our original opinion, we stated that Wetzel accepted a reduction in his ownership interest from 12.5 percent to 5.51 per-

cent. A closer examination of the record reveals that Wetzel's interest was not reduced, but that the 5.51 percent figure represented Wetzel's ownership interest in the shares of SKS as opposed to his share of net profits of the corporation.

In light of this conclusion, Wetzel's interest or ownership will be dictated by the agreement. Considering that the only issue before us was whether the parties were required to arbitrate, we determine that ownership interest and related issues will be resolved during arbitration, pursuant to the agreement.