

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00142-CV

---

DENAR RESTAURANTS, LLC             APPELLANT

V.

CAROLE KING             APPELLEE

----------

## FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Denar Restaurants, LLC files this interlocutory appeal challenging the trial court's denial of its motion to compel arbitration. We affirm the trial court's order.

---

[1]*See* Tex. R. App. P. 47.4.

## I. Background

On October 4, 2010, Denar Restaurants hired Appellee Carole King to be a waitress at a Denny's Restaurant in North Richland Hills, Texas.[2] King reported to the restaurant for work and training on October 11. According to King, Michael Heaton, the general manager of the restaurant, began sexually harassing her shortly after she began her employment, and he falsely imprisoned and assaulted her on or about October 14. King alleges that the level of harassment and assault became untenable, and as a result, she could no longer work at the restaurant. King claims that she last worked at the restaurant on October 19 and that she was constructively discharged on October 20.

As a result of the alleged assault, King filed suit against Denar Restaurants.[3] Denar Restaurants filed a motion to compel arbitration, claiming King was required to arbitrate her dispute with Denar Restaurants pursuant to a "Mutual Agreement to Arbitrate" (the Agreement) that Denar Restaurants claims

---

[2]Denar Restaurants independently operated the restaurant in accordance with the terms of a franchise agreement between DFO, LLC, an affiliate of Denny's, Inc., as franchisor, and Denar, LLC, as franchisee.

[3]King also sued Heaton, Denny's, Inc., Denar, LLC, and Sun Holdings, LLC. Sun Holdings, LLC provided administrative services to Denar Restaurants, including payroll processing, accounting, and record-keeping. King obtained an interlocutory default judgment against Heaton on liability, and she nonsuited Denny's, Inc. King later amended her pleading to include claims against Guillermo Perales, an alleged alter ego of Denar Restaurants, Denar, LLC, and Sun Holdings, LLC and against EYM Diner of DFW, LLC, an entity to which Denar Restaurants, Denar, LLC, and Sun Holdings, LLC allegedly fraudulently transferred their assets after King filed suit. Denar, LLC, Sun Holdings, LLC, Perales, and EYM Diner of DFW, LLC are not parties to this appeal.

2

King received on October 11, 2010. In response, King argued that the Agreement never became effective pursuant to the following provisions in the Agreement:

1. Effective Date

The effective date of this Mutual Agreement to Arbitrate Claims ("Agreement") is stated below. If Employee receives a copy of this Agreement prior to commencing work at Company, Employee's commencement of work at Company shall constitute acceptance of the terms and conditions of this Agreement regardless of whether or not Employee signs this document and shall be the Effective Date of this Agreement. For any other Employee, the Effective Date of this Agreement shall occur ten (10) calendar days after Employee receives notice of the terms and conditions of this Agreement and Employee continues to work for Company which shall indicate conclusively that he or she accepts the terms and conditions of this Agreement.

For Employees who commence or continue employment at Company as of their respective Effective Date, Company and Employee mutually agree to resolve Covered Claims which occur on or after the Effective Date according to the terms and conditions of the Agreement.

King further argued that the Agreement was unenforceable because it was not signed by either Denar Restaurants or King, it lacked consideration, and it was procedurally and substantively unconscionable. In addition, King claimed that Denar Restaurants waived its right to arbitration by judicial conduct, that sexual assault claims were outside the scope of the Agreement, and that the Agreement was induced or procured by fraud.

After an evidentiary hearing, the trial court denied Denar Restaurants's motion, stating in its order "that the parties are not bound by an arbitration

3

agreement and that the current dispute or controversy between the parties is not within the scope of an enforceable arbitration agreement." Denar Restaurants and King each submitted proposed findings of fact and conclusions of law, but the trial court did not file any findings or conclusions. This appeal followed.

## II. Discussion

In its sole issue, Denar Restaurants argues that the trial court abused its discretion by denying its motion to compel arbitration. Denar Restaurants complains that the arbitrator, not the trial court, should determine whether the Agreement became effective by its terms. Alternatively, Denar Restaurants contends that even if the trial court had the authority to determine the existence of the Agreement, the trial court abused its discretion because Denar Restaurants established that the Agreement was a valid agreement to arbitrate and that King's claims are within the scope of the Agreement,[4] shifting the burden to King to establish an affirmative defense to the Agreement, which it argues she failed to do.[5]

---

[4] In her fifth amended petition, King asserts claims of assault and battery, false imprisonment, negligence, discrimination and sexual harassment, vicarious liability/respondeat superior, breach of contract, intentional infliction of emotional distress, piercing the corporate veil/alter ego, and fraudulent transfer and conspiracy. Denar Restaurants admits that King's fraudulent transfer/conspiracy claims are not within the Agreement's scope.

[5] In its reply brief, Denar Restaurants argues that the trial court abused its discretion by excluding evidence of King's prior convictions. *See* Tex. R. Evid. 609. Denar Restaurants did not raise or argue this issue in its opening brief, and it is not responsive to the arguments contained in King's brief. *See* Tex. R. App. P. 38.3 (stating that appellant may file a reply brief addressing any matter in

4

## A. Standard of Review

We review the trial court's denial of a motion to compel arbitration for an abuse of discretion. *See In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding); *Cleveland Constr., Inc. v. Levco Constr., Inc.*, 359 S.W.3d 843, 851–52 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd) (explaining standards of review for arbitration appeals). A trial court abuses its discretion when it refuses to compel arbitration pursuant to a valid and enforceable arbitration agreement. *In re Halliburton Co.*, 80 S.W.3d 566, 573 (Tex. 2002) (orig. proceeding), *cert. denied*, 537 U.S. 1112 (2003).

Under this standard, we review the trial court's legal determinations de novo and defer to the trial court's factual determinations if they are supported by the evidence. *Cleveland Constr. Inc.*, 359 S.W.3d at 851–52. In reviewing the trial court's factual determinations, we must credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006). We are required to consider only the evidence and inferences tending to support the finding under attack and to disregard all evidence and inferences to the contrary. *In re Trammell*, 246 S.W.3d 815, 820

appellee's brief); *Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 72 (Tex. App.—San Antonio 2011, no pet.) (declining to consider issues raised in reply brief that were not raised in appellant's original brief or raised in response to appellee's brief); *Lopez v. Montemayor*, 131 S.W.3d 54, 61 (Tex. App.—San Antonio 2003, pet. denied) ("A reply brief is not intended to allow an appellant to raise new issues."). Therefore, we do not consider this issue.

(Tex. App.—Dallas 2008, orig. proceeding). Because no findings of fact or conclusions of law were filed, we must uphold the trial court's decision if there is sufficient evidence to support it on any legal theory asserted. *Shamrock Foods Co. v. Munn & Assocs., Ltd.*, 392 S.W.3d 839, 844 (Tex. App.—Texarkana 2013, no pet.); *Wetzel v. Sullivan, King & Sabom, P.C.*, 745 S.W.2d 78, 81 (Tex. App.—Houston [1st Dist.] 1988, no writ).

## B. Applicable Law

The Agreement provides that the Federal Arbitration Act (FAA) governs all aspects of this Agreement. *See In re AdvancePCS Health L.P.*, 172 S.W.3d 605–06 & n.3 (Tex. 2005) (orig. proceeding) (stating that FAA governs arbitration in Texas if parties expressly contracted for FAA's application). The FAA provides, in relevant part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C.A. § 2 (West 2009). This provision has been described as reflecting both a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67, 130 S. Ct. 2772, 2776 (2010); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983)). "The FAA thereby places arbitration agreements on an equal footing with other contracts, . . . and

6

requires courts to enforce them according to their terms." *Rent-A-Center*, 561 U.S. at 67, 130 S. Ct. at 2776 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 1206 (2006); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S. Ct. 1248, 1255 (1989)).

"Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005) (orig. proceeding). "Because arbitration is contractual in nature, the FAA generally 'does not require parties to arbitrate when they have not agreed to do so.'" *Id.* (quoting *Volt Info. Scis., Inc.*, 489 U.S. at 478, 109 S. Ct. at 1255 ("Arbitration under the [FAA] is a matter of consent, not coercion . . . .")). A party seeking to compel arbitration has the initial burden to establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims at issue fall within the arbitration agreement's scope. *In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006) (orig. proceeding); *Grand Homes 96, L.P. v. Loudermilk*, 208 S.W.3d 696, 701 (Tex. App.—Fort Worth 2006, pet. denied). If the party seeking arbitration carries its initial burden, the burden shifts to the opposite party to present evidence of an affirmative defense. *AdvancePCS Health L.P.*, 172 S.W.3d at 607.

While a strong presumption favoring arbitration exists, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223,

7

227 (Tex. 2003). In deciding whether a party has met its initial burden, we do not resolve doubts or indulge a presumption in favor of arbitration. *Id.* Rather, "the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists." *Id.*

## C. Application

The dispositive issue in this case is whether the alleged Agreement between Denar Restaurants and King became effective by its terms. The existence of a valid arbitration agreement "is therefore a gateway matter for the court to decide." *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (orig. proceeding) (citing *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding)); *see, e.g.*, *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2855–56 (2010) ("It is . . . well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide."); *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 317 (5th Cir. 2011) ("[It] is for the courts and not the arbitrator to decide in the first instance[ ] a dispute over whether the parties entered into any arbitration agreement in the first place."); *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 212 (5th Cir. 2003) ("We vacate the order compelling arbitration and remand the case to the district court, concluding that where the very existence of any agreement to arbitrate is at issue, it is for the courts to decide based on state-law contract formation principles.").

8

Whether an enforceable agreement to arbitrate exists between Denar Restaurants and King is a legal question we review de novo. *See In re Jindal Saw Ltd.*, 264 S.W.3d 755, 761 (Tex. App.—Houston [1st Dist.] 2008, orig. proceeding). As the party urging arbitration, Denar Restaurants must show that the Agreement meets all requisite contract elements for a valid and binding contract. *See IHS Acquisition No. 131, Inc. v. Iturralde*, 387 S.W.3d 785, 791 (Tex. App.—El Paso 2012, no pet.) (citing *Davidson*, 128 S.W.3d at 228). Formation of a binding contract requires: "(1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the term; and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Id.* (citing *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 465 (Tex. App.—Dallas 2006, pet. denied)).

Section 1 of the Agreement provides that it becomes effective upon the occurrence of one of two events. First, "[i]f Employee receives a copy of this Agreement prior to commencing work at Company, Employee's commencement of work at Company shall constitute acceptance of the terms and conditions of this Agreement regardless of whether or not Employee signs this document and shall be the Effective Date of this Agreement." Second, "[f]or any other Employee, the Effective Date of this Agreement shall occur ten (10) calendar days after Employee receives notice of the terms and conditions of this Agreement and Employee continues to work for Company which shall indicate conclusively that he or she accepts the terms and conditions of this Agreement."

9

Section 1 further provides, "For Employees who commence or continue employment at Company as of their respective Effective Date, Company and Employee mutually agree to resolve Covered Claims which occur on or after the Effective Date according to the terms and conditions of this Agreement." The Agreement also states that it "commences on the Effective Date and applies to all Covered Claims which occurred on or after the Effective Date."

At the hearing on the motion to compel, King testified that her first day of work at the restaurant was October 11, 2010. Judy Lynn, the manager on duty that day, gave King some papers and asked her to sign them before she started her training. Denar Restaurants claims Lynn gave King a new hire packet, which included various employment forms, including the Agreement, and a document entitled "Receipt of Employment Documents."

The "Receipt of Employment Documents" is a list of documents Denar Restaurants claims were included in King's new hire packet. At the top of the "Receipt of Employment Documents," there is an acknowledgement that states, "I . . . agree that I have received and reviewed the following documents." This acknowledgment is followed by the instruction, "Please initial after each document described below." Several employment-related documents are then listed—including the Agreement—each with a blank to the right for the recipient's initials. At the bottom of the "Receipt of Employment Documents," there is a space for the employee's signature and the date.

King claimed that she never received a copy of the Agreement and that neither Lynn nor anyone else associated with the restaurant told her about the Agreement. King testified that she saw the Agreement for the first time on January 25, 2013, the second day of the hearing on the motion to compel. Denar Restaurants offered a "Receipt of Employment Documents" allegedly bearing King's initials in the blanks next to each document listed and her signature at the bottom as proof of King's receipt of the Agreement. King admitted that she signed the "Receipt of Employment Documents," but she denied that the initials in the blanks were hers.

Susan Abbey, a handwriting expert hired by Denar Restaurants, testified that she compared King's signature on the "Receipt of Employment Documents" with several known exemplars of King's signature and concluded that the signature at the bottom of the "Receipt of Employment Documents" was made by the same person who made the exemplars. Abbey further testified that the initials in the blank beside the Agreement in the list of documents in the "Receipt of Employment Documents" were made by the same person who made the initials in the blanks beside the other documents in the list. Abbey further opined that the initials in the blank beside the Agreement in the list of documents were written in the same ink as King's signature and were consistent with King's printing in her employment application.

King testified that her last day of work was October 19, 2010. King alleged in her pleadings that she was constructively discharged on October 20, 2010. At

11

the hearing, King explained that she believed that October 20, 2010, was the date that either she or her attorney notified Denar Restaurants that she would not be returning to work.

Denar Restaurants argues that the phrase "commencing work" in section 1 of the Agreement should not be construed to "encompass a day of nothing more than training, orientation, and form completion in anticipation of beginning the job." Denar Restaurants contends that a more "plain meaning" reading of the phrase "commencing work" is one that interprets "work" as the employee's actual performance of the job for which the employee was hired, which, in King's case, was waitressing. We disagree. The word "work," which is undefined in the Agreement, has a well-accepted common meaning: "physical or mental exertion to attain an end, [especially] as controlled by and for the benefit of an employer; labor." Black's Law Dictionary 1742 (9th ed. 2009). Denar Restaurants required all new employees to go through orientation and training, during which time new employees completed the documents in the new hire packet. And Denar Restaurants admitted that King was paid for October 11, 2010, including the time she spent completing the new hire packet and in training. Therefore, we conclude that King commenced work on October 11, 2010, when she began the orientation and training process at the restaurant.

There was conflicting testimony as to whether King received either the Agreement or notice of its terms and conditions. If she did not receive the Agreement or notice of its terms and conditions, then it did not became effective

12

under either prong of section 1. If King did receive the Agreement, the earliest she could have done so was after she commenced work on October 11, 2010, and therefore, the Agreement did not become effective by her commencement of work under the first prong. Thus, we look to the second prong to determine the Effective Date of the Agreement. King testified that her last day of work was October 19, 2010, and that she was constructively discharged on October 20, 2010. Denar Restaurants offered no contradictory evidence regarding the dates King worked. Therefore, even if King received notice of the terms and conditions of the Agreement after she commenced work, it never became effective by its terms because King did not continue to work for Denar Restaurants for ten days after receiving such notice. Accordingly, we hold that an agreement to arbitrate did not exist between Denar Restaurants and King.

Denar Restaurants also complains that an arbitrator, rather than the trial court, should determine whether and when the Agreement became effective because the following provisions in the Agreement reserved all issues of arbitrability for the arbitrator:

5. Scope of Arbitration Agreement

. . . .

**c.** **Other Scope of Arbitration Provisions**

. . . .

The question of whether any particular claim is a Covered Claim under the terms of this Agreement shall be arbitrated pursuant to the procedures set forth in this Agreement.

13

6.      Procedure

### a.      Who Shall Arbitrate?

All arbitrations under this Agreement shall be administered by Judicial Workplace Arbitration, Inc. under its rules for the resolution of disputes, and if not available, then the American Arbitration Association ("AAA") and its rules.[6]

We recognize that an arbitration agreement may give the arbitrator the power to resolve gateway issues. *See, e.g.*, *Rent-A-Center* 561 U.S. at 68–69, 130 S. Ct. at 2777 (recognizing parties can agree to arbitrate questions of arbitrability); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 1923 (1995) (holding question of primary power to decide arbitrability "turns upon what the parties agreed about *that* matter"); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 1418 (1986) (holding parties may agree to arbitrate arbitrability). But because we have determined that the Agreement never came into existence by its terms, we conclude that the parties did not agree to submit any issues to the arbitrator.

---

[6]Neither the Judicial Workplace Arbitration rules nor the AAA rules are in the record before us. In its reply brief, Denar Restaurants points us to Rule 6a of the AAA Employment Arbitration Rules and Mediation Procedures, which provides as follows: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." American Arbitration Association, Employment Arbitration Rules and Mediation Procedures, Rule 6a (amended and effective Nov. 1, 2009), *available at* http://adr.org/aaa/faces/rules.

Because we have concluded that the Agreement never came into existence, which is dispositive of this appeal, we need not address the remainder of Denar Restaurants's arguments. *See* Tex. R. App. P. 47.1. Accordingly, we overrule Denar Restaurants's sole issue.

## III. Conclusion

Having overruled Denar Restaurants's sole issue, we affirm the trial court's order denying Denar Restaurants's motion to compel arbitration.


/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and GABRIEL, JJ.

DELIVERED:  May 30, 2014