DALLAS CARDIOLOGY ASSOCIATES, P.A., d/b/a HeartPlace, Appellant,

v.

Saleem MALLICK, M.D. and Evelio D. Garcia, M.D., Appellees.

No. 06–98–00021–CV.

Court of Appeals of Texas, Texarkana.

Argued July 28, 1998.

Decided Aug. 12, 1998.

Rehearing Overruled Sept. 9, 1998.

G. Harvey Dunn, III, Vinson & Elkins, Dallas, Jennifer Haltom Doan, Patton, Haltom, Roberts, Texarkana, for appellant.

William G. Short, Jr., Short, How, Lozano, Frels, Tredoux, Dallas, James R. Rodgers, Moore, Payne, Clem, Rodgers, Paris, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

OPINION

ROSS, Justice.

Dr. Saleem Mallick and Dr. Evelio Garcia brought a declaratory judgment action against Dallas Cardiology Associates, P.A. d/b/a HeartPlace ("HeartPlace") seeking construction of their respective employment contracts. HeartPlace filed a motion to compel arbitration of the employment contracts according to the terms of the agreements, which require that such disputes be resolved by arbitration. The trial court denied the motion, and HeartPlace now brings this appeal asserting that the trial court abused its discretion.

## BACKGROUND

Both Mallick and Garcia were employed by HeartPlace pursuant to employment agreements entered into in 1996. Both agreements contain an identical arbitration clause which states:

> 30. *Arbitration.* Any dispute arising over the terms and conditions of this Agreement or in any manner relating to this Agreement which the parties are unable to resolve informally between themselves or by mediation shall be submitted, upon the motion of either party, to arbitration under the appropriate rules of the American Arbitration Association ("AAA").
>
> . . . .
>
> . . . . The parties separately and specially agree that if either shall contend that this Agreement is invalid or that grounds exist for its rescission or cancellation, that any dispute concerning such contention shall be submitted to arbitration in the manner provided in this section. . . .

During 1997, Mallick's compensation was reduced from $17,500.00 bi-monthly to $1,000.00 bi-monthly. Garcia also contends that he was not paid the full amount owed to him under his employment agreement. On October 6, 1997, the doctors filed a declaratory judgment action seeking a declaration that HeartPlace committed an anticipatory breach by unilaterally reducing the compensation paid to Mallick. They also sought an accounting by HeartPlace so that the proper amounts due under the employment agreements could be determined. The doctors terminated their employment with HeartPlace on October 9, 1997.

On November 24, 1997, HeartPlace filed a plea in abatement, motion to compel arbitration, motion to stay, and an original answer subject thereto seeking to compel arbitration and stay the other proceedings pursuant to the arbitration clauses of the employment contracts.

The doctors subsequently amended their petition by adding tort claims for interference with a contract, slander and defamation, and asked for injunctive relief to prevent HeartPlace's alleged interference with their patients. The amended petition also asked for a declaration that the noncompetition provisions of the employment agreements were unenforceable.

The trial court held a hearing on December 9, 1997, on the motion to compel arbitration. The doctors contended that arbitration was not required because:

(1) HeartPlace repudiated/anticipatorily breached the contract by unilaterally reducing the physicians' compensation levels;

(2) HeartPlace failed to meet a condition precedent to arbitration by not submitting the claim to mediation;

(3) tort claims are asserted which fall outside the arbitration agreement; and

(4) the separation clause which contained a noncompetition agreement is unenforceable and unreasonable and an arbitrator is without power to enforce the noncompetition agreement; also, the liquidated damages clause of the noncompetition agreement is unreasonable.

HeartPlace responded to all of these contentions by essentially arguing that the physicians entered into the contract knowingly and all of these disputes, including the tort claims, fall within the scope of the arbitration clause.

The trial court denied the motion to compel arbitration in a February 5, 1998, order. No findings of fact or conclusions of law were requested or filed.

## ANALYSIS

In this accelerated appeal of an interlocutory order denying a motion to compel arbitration, we review the trial court's decision under a "no evidence" standard. A "no evidence" point requires the appellate court to consider only the evidence and inferences tending to support the finding under attack and to disregard all evidence and inferences to the contrary. *Wetzel v. Sullivan, King & Sabom, P.C.*, 745 S.W.2d 78, 79 (Tex.App.-Houston [1st Dist.] 1988, no writ) (citing *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965)). Because no findings of fact or conclusions of law were filed, we must uphold the trial court's decision if there is sufficient evidence to support it on any legal theory asserted. *Wetzel*, 745 S.W.2d at 81.

The party seeking arbitration has the initial burden to establish his right to the remedy under the contract; that is, to establish that a valid arbitration agreement exists. *City of Alamo v. Garcia*, 878 S.W.2d 664, 665 (Tex.App.-Corpus Christi 1994, no writ); *see Nationwide of Fort Worth, Inc. v. Wigington*, 945 S.W.2d 883, 884 (Tex.App.-Waco 1997, no writ). Both parties concede that an arbitration agreement existed. In applying the law to the Federal Arbitration Act, Texas courts have concluded that once the existence of an arbitration agreement has been established, then a presumption attaches favoring arbitration. At this point, the burden of proof shifts to the party seeking to avoid the arbitration agreement to show that some grounds exist in law or equity for the revocation of the contract. Such grounds could include fraud, waiver, unconscionability, or that the dispute was not within the scope of the agreement. *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 900 (Tex.1995); *Merrill Lynch, Pierce, Fenner, and Smith, Inc. v. Longoria*, 783 S.W.2d 229, 231 (Tex.App.-Corpus Christi 1989, orig. proceeding). This is a proper placement of the burden under Texas law, given the strong Texas presumption in favor of arbitration. *See Brazoria County v. Knutson*, 142 Tex. 172, 176 S.W.2d 740, 743 (1943); *Wetzel*, 745 S.W.2d at 81.

In determining whether to compel arbitration, the court must decide two issues: (1) whether a valid, enforceable arbitration agreement exists, and (2) if so, whether the claims asserted fall within the scope of the agreement. *BDO Seidman v. Miller*, 949 S.W.2d 858, 860 (Tex.App.-Austin 1997, writ dism'd w.o.j.); *Nationwide*, 945 S.W.2d at 884. The court has no discretion and must compel arbitration if the answer to both questions is affirmative. *Merrill Lynch, Pierce, Fenner & Smith v. Eddings*, 838 S.W.2d 874, 878 (Tex.App.-Waco 1992, writ denied). Doubts regarding the scope of arbitration agreements are resolved in favor of arbitration. *Id.* at 880.

1. *Does a valid, enforceable arbitration agreement exist?*

The contracts in dispute in this case were attached to the pleadings filed with the trial court. None of the parties dispute the existence of the arbitration clauses within the contracts.

A. *Requirement of Mediation*

The doctors contend that HeartPlace is not entitled to arbitration because it has not presented any evidence that it complied with a condition precedent to invoking arbitration, that being the requirement to mediate the dispute before pursuing arbitration. The portion of the contracts on which the doctors rely states:

30. *Arbitration.* Any dispute arising over the terms and conditions of this Agreement or in any manner relating to this Agreement which the parties are unable to resolve informally between themselves or by mediation shall be submitted, upon the motion of either party, to arbitration under the appropriate rules of the American Arbitration Association ("AAA").

Breach of a condition precedent affects the enforceability of the provision to which the condition is attached. *Landscape Design and Constr., Inc. v. Harold Thomas Excavating, Inc.*, 604 S.W.2d 374, 376 (Tex.Civ. App.-Dallas 1980, writ ref'd n.r.e.).

HeartPlace contends that the doctors "ran to the courthouse" and thereby demonstrated their intent to forego any informal attempts to resolve the dispute. Also, HeartPlace contends that if the provision relied upon by the

doctors was truly a condition precedent to arbitration, the doctors could frustrate any arbitration of the dispute by simply refusing to participate in any informal attempts at resolution. Lastly, HeartPlace argues that the parties have remained at the courthouse and this evidences an inability of the parties to informally resolve the issues.

The record does not demonstrate that either party attempted to resolve the dispute informally. Furthermore, the language of the agreement does not appear to rise to the level of a condition precedent. The arbitration provision is not defeated by a failure to mediate.

**B. *Did HeartPlace repudiate the contract?***

 The doctors contend that Heart-Place anticipatorily breached, and therefore repudiated, the contract by significantly reducing the compensation levels to the doctors. According to the doctors, this repudiation is cause to render the entire contract, including the arbitration requirement, unenforceable. For this proposition, the doctors rely heavily on *Miller v. Puritan Fashions Corp.*, 516 S.W.2d 234 (Tex.Civ.App.-Waco 1974, writ ref'd n.r.e.). In *Miller*, the appellee terminated appellant before the conclusion of the employment contract by sending a letter so advising Miller. The employment contract contained an arbitration provision governed by the Federal Arbitration Act. Although governed by the Act, the court stated:

> If the Texas law applied in the case at bar, because of such anticipatory breach the Plaintiff would be relieved of any obligations imposed upon him by the contract. It has long been the law in Texas that when one party repudiates the agreement and refuses to be bound by material obligations, the other party may accept such repudiation as final and is not required to further regard the obligations imposed upon him thereby.

*Miller*, 516 S.W.2d at 237–38. HeartPlace argues that the statement made by the court is *dicta* and, as applied to the *Miller* case, a Federal Arbitration Act case, it certainly is *dicta*. Although the language does give

some insight as to how one Texas court of appeals would construe a similar situation under the Texas statute, another court of appeals has taken a different view. In *Pepe Int'l Dev. Co. v. Pub Brewing Co.*, 915 S.W.2d 925, 932 (Tex.App.-Houston [1st Dist.] 1996, no writ), the Houston court applied the interpretation embraced by the Federal Arbitration Act and found that arbitration agreements made under the Texas arbitration statute are enforceable and irrevocable in spite of attacks made upon the contract as a whole. We find the interpretation of *Pepe* more persuasive. *Pepe* effectuates the purpose of an arbitration clause, that is, for parties to solve their disputes in a nonjudicial forum. *Miller*, on the other hand, would tend to waste even more judicial resources by essentially requiring two judicial determinations. Under *Miller*, parties would first be forced to litigate a perceived breach for purposes of determining whether the arbitration clause is operative and then, depending on the outcome of that proceeding, the parties could be in court a second time to litigate the substance of their dispute. In this case, we find that any potential breach of the contract does not render the entire contract unenforceable. The arbitration clause found in these agreements between the doctors and HeartPlace remains in effect.

**C. *Can the parties specifically contract to arbitrate enforceability disputes?***

 Last, HeartPlace asserts that even if it had repudiated the contract and we applied the interpretation in *Miller*, such repudiation would not frustrate the agreement's arbitration clause. The agreement specifically sets out the following:

> The parties separately and specially agree that if either shall contend that this Agreement is invalid or that grounds exist for its rescission or cancellation, that any dispute concerning such contention shall be submitted to arbitration in the manner provided in this section. . . .

Due to this contract clause, HeartPlace contends that the parties have contracted around the *dicta* in *Miller* where the Waco Court of Appeals stated that if a contract was breached by one party, then the other party

was not bound by any provision of the contract. HeartPlace contends that the favored status of arbitration in Texas law and the strict requirement under the Federal Arbitration Act which requires disputes to be arbitrated even when other provisions of the contract are deemed unenforceable clearly indicate that parties must submit to arbitration even in the event the contract's enforceability as to other provisions is in question.

The doctors argue that the Texas statute specifically provides an out from a contractual arbitration requirement in the instance where the contract is found to be unenforceable at law or in equity. The statute reads:

(a) A written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy that:

(1) exists at the time of the agreement; or

(2) arises between the parties after the date of the agreement.

(b) A party may revoke the agreement only on a ground that exists at law or in equity for the revocation of a contract.

TEX. CIV. PRAC. & REM.CODE ANN. § 171.001 (Vernon Supp.1998). The Texas statute is unclear, and case law is conflicting. The doctors assert that the *Miller* application, as discussed earlier, is correct and disregard *Pepe*. Even if the *Miller* court's application of Texas law is correct, it is still an unresolved question as to whether parties may contract around this interpretation. If the parties can contract around this, then it would seem that the doctors are required to arbitrate this dispute.

Given the strong public policy arguments in favor of arbitration, the ambiguity of Texas law, and the clear language of the specific arbitration agreement in this case, we find that the parties have agreed to submit to arbitration, regardless of the enforceability problems asserted by the doctors.

2. *Do the tort claims fall within the scope of the arbitration agreement?*

▬ The doctors raised several claims which appear to sound in tort. Because these claims are tort claims, the doctors contend that they are not subject to arbitration.

Both parties agree that the arbitration of the tort claims should be evaluated under the standard applied in *Fridl v. Cook*, 908 S.W.2d 507, 511 (Tex.App.-El Paso 1995, writ dism'd w.o.j.).

The test we employ in determining whether a tort claim is subject to arbitration is:

[W]hether the particular tort claim is so interwoven with the contract that it could not stand alone or, on the other hand, is a tort completely independent of the contract and could be maintained without reference to the contract. *Valero Energy Corp. v. Wagner & Brown*, 777 S.W.2d 564, 566 (Tex.App.-El Paso 1989, writ denied).

Although the record is vague, the physicians make claims that HeartPlace erroneously told patients that the doctors had left to pursue other interests and also told patients that one of the doctors had suffered a heart attack and his continued medical practice was in question. Garcia specifically contends that his patient relationships predated his agreement with HeartPlace and that Heart-Place personnel had no right to interfere with those relationships by contacting or otherwise communicating with those patients. Also, Garcia says that he did not agree to sell his practice to HeartPlace. From these instances, the physicians extrapolate their claims of defamation and interference with patient relationships.

HeartPlace urges that these claims are also subject to arbitration because they are so interrelated with the contract under the *Fridl* test so as to require arbitration. HeartPlace argues that these claims are such that, absent the physicians' agreements, the claims could not be brought at all against HeartPlace. Also, HeartPlace contends that the status of the "ownership" of the patients is a dispute which must be determined with reference to the agreement and, therefore, is subject to arbitration.

▬ If the arbitration clause contained in the contract is broad, as it is in this agreement, arbitration should not be denied unless it can be said with positive assurance that the particular dispute is not covered. *Kline v. O'Quinn*, 874 S.W.2d 776, 782 (Tex.

App.-Houston [14th Dist.] 1994, writ denied). The arbitration agreement in this case subjects "[a]ny dispute arising over the terms and conditions of this Agreement or in any manner relating to this Agreement" to arbitration. Since it cannot be said with positive assurance that these claims are not subject to arbitration, the parties should be required to arbitrate these issues as well.

### 3. Do the provisions in the noncompetition portion of the contract fall within the scope of the arbitration clause?

Garcia specifically contends that Section 26 of the agreement, which contains a noncompete covenant, is unenforceable and invalid as a matter of law and petitioned the trial court for a declaratory judgment finding as such. The covenant prevents doctors from practicing within five miles of where they formally rendered services for HeartPlace for a period of eighteen months following separation from HeartPlace. The physicians could "buy" their way out of the covenant if they chose to pay HeartPlace the equivalent of one hundred percent of the physicians' average gross monthly compensation for the three years prior to separation. The covenant provides for a full range of remedies in the event it is broken, including injunctive relief, in addition to whatever other legal or equitable relief to which HeartPlace is entitled.

Garcia's arguments contend specifically that: (1) the liquidated damages portion of the covenant is outrageous and unrelated to any damages HeartPlace might suffer; (2) the ability to seek injunctive relief, presumably in a court of law, evidences HeartPlace's intent to go outside of the arbitration clause; (3) an arbitrator has no jurisdiction to enforce an injunction; and (4) the invalidity of the covenant renders the remainder of the agreement unenforceable.

In response, HeartPlace simply argues that the agreement in no way circumvents the arbitration clause by allowing for injunctive relief and again points to the language in Section 30 which requires "any dispute" to be arbitrated. HeartPlace also contends that an arbitrator does have power to grant injunctive relief and that relief can be enforced by

any court of competent jurisdiction. *See J.J. Gregory Gourmet Servs., Inc. v. Antone's Import Co.*, 927 S.W.2d 31, 36 (Tex.App.-Houston [1st Dist.] 1995, no writ).

As discussed earlier, given the broad wording of the arbitration agreement, this dispute requires arbitration, especially since a dispute about the covenant is clearly directly related to the agreement.

### 4. Is the arbitration clause too broad?

In their last argument, the doctors assert that the arbitration clause is so broad and one-sided that it is unenforceable as a matter of law, but cite no authority for this position. The contracts, with the broad arbitration language, were signed by both the physicians. A person who signs a contract is presumed to know and understand its contents. *R. Conrad Moore & Assocs., Inc. v. Lerma*, 946 S.W.2d 90, 94 (Tex.App.-El Paso 1997, writ denied). We see no reason in equity or at law which would persuade us to hold these clauses unenforceable.

### CONCLUSION

We sustain the point of error relating to the failure of the court to order arbitration, reverse the order denying the motion to arbitrate, and remand this cause with instructions to the trial court to enter an order compelling arbitration and to stay all other proceedings pending the outcome of the arbitration.