In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00209-CR


______________________________




FELIPE RUBIO GASPAR, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 336th Judicial District Court


Fannin County, Texas


Trial Court No. 22481




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Felipe Rubio Gaspar appeals. We have received a motion from counsel asking us to extend
the time for filing his notice of appeal. He states that Gaspar was convicted June 12, 2008, that a
motion for new trial and arrest of judgment was filed, and that appellate counsel was appointed. 
Counsel states that he asked the district clerk whether a notice of appeal had been filed and was told
that it had been. However, on October 15, 2008, counsel discovered that no notice of appeal had
been filed, and he filed a notice of appeal October 16, 2008.

 With conviction and sentencing occurring June 12, 2008, and with a motion for new trial
being timely filed, the notice of appeal was due to be filed no more than ninety days later, on
September 10, 2008. The rule also provides a fifteen-day grace period, which expired September 25,
2008. See Tex. R. App. P. 26.2. The information before this Court reflects that no notice of appeal
or motion to extend time was filed until over twenty days after the expiration of the grace period. 

 Our jurisdiction over an appeal is circumscribed by statute and rule, and we are not permitted
to engage in actions that will enlarge that jurisdiction. Without a timely filed notice of appeal, this
Court is without jurisdiction. Rodarte v. State, 860 S.W.2d 108 (Tex. Crim. App. 1993); see Slaton
v. State, 981 S.W.2d 208 (Tex. Crim. App. 1998). Further, courts of appeals may not employ Rule 2
of the Texas Rules of Appellate Procedure to suspend appellate time limits and thus expand our
jurisdiction. Garza v. State, 896 S.W.2d 192 (Tex. Crim. App. 1995); see Tex. R. App. P. 2.

 Therefore, based on the information before us, we must conclude the notice of appeal is
untimely. (1)

 We dismiss the appeal for want of jurisdiction.




 Bailey C. Moseley

 Justice


Date Submitted: October 22, 2008

Date Decided: October 23, 2008


Do Not Publish



 
1. We are relying on counsel's statements concerning the timing of the events giving rise to the
notice of appeal. The relief sought must be granted by the Texas Court of Criminal Appeals.



 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00017-CV

                                                ______________________________

 

 

NEXION
HEALTH AT OMAHA, INC., D/B/A OMAHA HEALTHCARE CENTER, Appellant

 

                                                                V.

 

                                        VIRGIE M. MARTIN, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 276th
Judicial District Court

                                                             Morris County, Texas

                                                            Trial
Court No. 24,199

 

                                                                                                   

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            Virgie M.
Martin was injured while working for her employer, Nexion Health at Omaha, Inc.,
d/b/a Omaha Healthcare Center (Nexion). 
Martin sued Nexion for negligence. 
Nexion denied the claims and moved to compel arbitration of Martins
claims under the terms of its Employee Accident Plan (Plan).  The trial court denied the motion to compel
arbitration. 

            On appeal,
Nexion argues that the trial court abused its discretion by failing to enforce
the arbitration clause.  We reverse the
trial courts order denying arbitration because (1) the Injury Benefits Agreement
(Agreement) was not fraudulently induced, (2) the Agreement is not
unconscionable, and (3) the Agreement is supported by adequate consideration.

            Nexion
does not subscribe to the Texas Workers Compensation System; instead, it
provides benefits for on-the-job injuries under its own Plan.  Employees could opt whether to participate in
the Plan by executing the Agreement, which incorporated the Plan by
reference.  The Agreement includes
mandatory binding arbitration for any and all disputes arising out of a Bodily
Injury, Accident . . . [and] any claim of negligence brought by an [e]mployee .
. ., as well as any claim for benefits under the Plan . . ., any claim for
wrongful discharge, any claim of negligence brought by an employee, and any
claim or action relating to the interpretation or enforcement of the Agreement.  Under the terms of the Plan, Nexion reserved
the right to amend, modify, or terminate the Plan at any time.  Nexion employees could either accept and participate
in and receive benefits under the Plan or they could refuse to participate in
the Plan with the understanding that they would not receive any benefits
(including payment of [their] medical expenses) in the event of an on-the-job
injury.   

            On February
22, 2007, believing that, if she declined to participate in the Plan, she would
have no legal remedies or recourse if injured on the job, Martin executed the
Agreement, agreeing to the terms of the Plan. 
Martin testified that she had to sign the Agreement in order to keep her
job, a claim that Nexion denies and the express terms of the Agreement
contradict.  She testified that she read
the Agreement, but did not have an opportunity to review it with an attorney.  

            About two
years later, in January 2009, Martin sustained a work-related injury and filed
suit against Nexion, alleging that Nexions negligence proximately caused her
injuries.  Nexion denied the allegations
of Martins petition and moved to compel arbitration under the terms of the
Plan. 

            In response
to the motion to compel arbitration, Martin argued that the arbitration
Agreement was invalid or unenforceable because it was a misleading and
incorrect statement of the law, lacked consideration, was unconscionable and
unenforceable because the Plans benefits were substantially less generous than
those available under the Texas Workers Compensation Act, and was an adhesion
contract where Nexion had superior knowledge and bargaining power. 

            Nexion
argued that the Agreement does not violate public policy, that the Agreement
was supported by consideration in that both parties gave up their right to a jury
trial, that Martin received medical treatment, and that she received $23,531.46
in medical benefits and wage replacement benefits under the terms of the
Plan.  Martin does not deny receiving or
accepting those benefits.  Nexion argued
that, by accepting the benefits of the Agreement, Martin acquiesced to the Agreements
provisions, including mandatory arbitration. 

            The trial
court denied the motion to compel arbitration.  No findings of fact or conclusions of law were
requested or filed. 

            In
an accelerated appeal of an interlocutory order denying a motion to compel
arbitration, we review de novo the trial courts legal determinations and review
its factual determinations under a no evidence standard.  Trammell
v. Galaxy Ranch School, L.P., (In re
Trammell), 246 S.W.3d 815, 820 (Tex. App.Dallas 2008, orig. proceeding); Dallas Cardiology Assocs. v. Mallick,
978 S.W.2d 209, 212 (Tex. App.Texarkana 1998, pet. denied).  In reviewing the trial courts factual
determinations, we must credit favorable evidence if a reasonable fact-finder
could and disregard contrary evidence unless a reasonable fact-finder could
not.  Mallick,
978 S.W.2d at 212 (citing Kroger Tex.
Ltd. Pship v. Suberu, 216 S.W.3d 788, 793 (Tex. 2006); City of Keller v. Wilson, 168 S.W.3d
802, 807 (Tex. 2005)).  However, when the
facts relevant to the arbitration issue are not disputed, we are presented only
with issues of law, and therefore, review de novo the trial courts order.  Trammell,
246 S.W.3d at 820.  A no evidence point
requires the appellate court to consider only the evidence and inferences
tending to support the finding under attack and to disregard all evidence and
inferences to the contrary.  Id.; Wetzel
v. Sullivan, King & Sabom, P.C., 745 S.W.2d 78, 79 (Tex. App.Houston
[1st Dist.] 1988, no writ) (citing Garza
v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965)).  Because no findings of fact or conclusions of
law were filed, we must uphold the trial courts decision if there is
sufficient evidence to support it on any legal theory asserted.  Wetzel,
745 S.W.2d at 81.

            The
party seeking arbitration has the initial burden to establish his or her right
to the remedy under the contract; that is, to establish that a valid
arbitration agreement exists.  Cantella Co. v. Goodwin, 924 S.W.2d 943,
945 (Tex. 1996) (per curiam); City of
Alamo v. Garcia, 878 S.W.2d 664, 665 (Tex. App.Corpus Christi 1994, no
writ).  In applying the law to the
Federal Arbitration Act, Texas courts have concluded that, once the existence
of an arbitration agreement has been established, then a presumption attaches
favoring arbitration.  Mallick, 978 S.W.2d at 212.  At this point, the burden of proof shifts to
the party seeking to avoid the arbitration agreement to show that some grounds
exist in law or in equity for the revocation, invalidation, or avoidance of the
contract.  Id.  Such grounds could
include fraud, waiver, unconscionability, or that the dispute was not within
the scope of the agreement.  Id.  This
is a proper placement of the burden under Texas law, given the strong Texas
presumption in favor of arbitration.  See Brazoria County v. Knutson, 142 Tex.
172, 176 S.W.2d 740, 743 (1943); Wetzel,
745 S.W.2d at 81.

            In
determining whether to compel arbitration, the court must decide two issues:
(1) whether a valid, enforceable arbitration agreement exists, and (2) if
so, whether the claims asserted fall within the scope of the agreement.  BDO
Seidman v. Miller, 949 S.W.2d 858, 860 (Tex. App.Austin 1997, writ dismd
w.o.j.); Nationwide of Fort Worth, Inc.
v. Wigington, 945 S.W.2d 883, 884 (Tex. App.Waco 1997, writ dismd w.o.j.).
 The court has no discretion and must
compel arbitration if the answer to both questions is affirmative.  Merrill
Lynch, Pierce, Fenner & Smith v. Eddings, 838 S.W.2d 874, 878 (Tex.
App.Waco 1992, writ denied).  Doubts
regarding the scope of arbitration agreements are resolved in favor of arbitration.
 Id.
at 880.

            In
this case, neither party disputes that the Federal Arbitration Act governs the
Agreement in dispute, and Martin does not dispute that the Agreement existed or
that her claims are covered by it if the arbitration clause is valid and
enforceable.[1]  Therefore, the trial court was required to
compel arbitration unless Martin proved that the Agreement was invalid or
unenforceable.  See Canatella Co., 924 S.W.2d at 944.  The trial courts order in the underlying case
does not specify the grounds for denying arbitration.  Because an order denying arbitration must be
upheld if it is proper on any basis considered by the trial court, we will
address all of Martins defenses to the Agreement.  See
Garcia, 878 S.W.2d at 665.  At trial,
Martin argued that the arbitration clause was unenforceable because it was
misleading, unconscionable, and illusory for lack of mutual consideration.[2]  We address these arguments in turn.

(1)        The
Agreement Was Not Fraudulently Induced

 

            At trial,
Martin argued that the language of the option not to participate in the Plan
was misleading on its face and that it misled her into believing that, if she
rejected the Plan, she would not receive any benefits and would have no
recourse or remedies if she were injured on the job.  She asserted that she would not have agreed
to participate in the Plan had she known that opting not to participate in the
Plan would enable her to sue Nexion in a court of law for any on-the-job
injuries she sustained.  Because a claim
that a contract term is misleading does not set up a defense to the contract,
this point appears to claim, if anything, fraud in the inducement.

            To
prove fraudulent inducement, Martin had to show:  (1) that Nexion made a material
misrepresentation, (2) that it was either known to be false when made or was
asserted recklessly without knowledge of its truth, and (3) that it was
intended to be acted on, was relied on, and caused injury.  Formosa
Plastics Corp. USA v. Presidio Engrs & Contractors, Inc., 960 S.W.2d
41, 47 (Tex. 1998).  The issue here is
whether the option not to participate is a misrepresentation.

            Courts cannot
determine the meaning of a contracts terms without examining them in the
context of the entire Agreement.  See Tower Contracting Co. v. Flores, 157
Tex. 297, 302 S.W.2d 396, 399 (1957) (contractual meaning not derived from
piecemeal portions of contract); see also
Crawford v. Pullman, Inc., 630 S.W.2d 377, 37980 (Tex. App.Houston [14th
Dist.] 1982, no writ). 

            Here,
the Agreement is a mere two pages long, and an employee may choose either of
the following two options:

I accept this opportunity to participate in and
receive benefits under the Plan.

 

OR

 

I reject this opportunity to participate in the
Plan and understand that I will not receive any benefits (including payment of
my medical expenses) in the event of an on-the-job injury.

 

Other than the option not to participate, the word benefit
or benefits appears five times in the Agreement,[3]
and every time, it directly references the Plan as the source of the benefits:

            1.         Nature
of Injury Benefit Plan Payments

            2.         Plan
benefit payments are not an admission of liability . . . by the Company.

            3.         .
. . any claim for benefits under the Plan . . . 

            4.         .
. . the Plans medical, disability, dismemberment, death and burial benefits.

            5.         I
accept this opportunity to participate in and receive benefits under the Plan.

 

Specifically, the option to
participate in the Plan directly references benefits under the Plan and that
sentence is located immediately above the option to reject participation.  The Agreements text does not suggest that benefits
in the rejection clause should mean anything other than benefit or benefits
as used in other places in the Agreement, that is, benefits under the Plan.

            Also, the
Agreement plainly informed Martin that (a) Nexion did not have Texas workers
compensation insurance, (b) when an employer does not have workers
compensation insurance, an employee injured on the job can sue his employer and
recover damages if the employers negligence caused the injury, and (c) in
exchange for the Plans benefits, the signor agrees to binding arbitration for,
and is giving up the right to a jury trial on all of the claims for, wrongful
discharge, any claim of negligence brought by an employee, and any claim or
action relating to the interpretation or enforcement of [the Agreement].  Those parts of the Agreement, and the
Agreement in general, serve to supply meaning to the word benefits as used in
the rejection clause.

            When
read in the context of the entire Agreement, the phrase I . . . understand
that I will not receive any benefits (including payment of my medical expenses)
in the event of an on-the-job injury unambiguously refers to benefits under
the Plan, rather than all possible benefits, damages, or other legal
remedies.  Therefore, the option to
reject is neither misleading nor a material misrepresentation. 

(2)        The Agreement Is Not Unconscionable

 

            Martin also
argued that the Agreement was unenforceable because it was unconscionable.  Unconscionable contracts are not enforceable
under Texas law.  In re Poly-America, L.P., 262 S.W.3d 337, 348 (Tex. 2008).  However, according to the Texas Supreme
Court, arbitration agreements are not inherently unconscionable.  In re
Palm Harbor Homes, Inc., 195 S.W.3d 672, 678 (Tex. 2006).  Because the law favors arbitration, the
party opposing arbitration bears the burden to prove unconscionability. TMI, Inc. v. Brooks, 225 S.W.3d 783, 792
(Tex. App.Houston [14th Dist.] 2007, orig. proceeding) (citing FirstMerit Bank, 52 S.W.3d at 756).

            The law
recognizes two classes of unconscionability, each of which we will address.  Procedural unconscionability refers to the
fairness of the circumstances surrounding adoption of the arbitration provision,
whereas substantive unconscionability refers to the general fairness of the
arbitration provision itself.  Palm Harbor Homes, 195 S.W.3d at 677.

            The
Agreement was not procedurally unconscionable.

 

            At trial,
Martin argued that the Agreement was unconscionable because it was an adhesion
contract in that Nexion had superior knowledge, because Nexion failed to
explain the Plan, because Nexion failed to disclose to Martin her right to sue
Nexion as a nonsubscriber to workers compensation, because Nexion failed to
disclose the consequences of agreeing to binding arbitration, because Nexion
did not encourage her to consult with an attorney before agreeing to the terms
of the Agreement, and because agreeing to participate in the Plan was a
condition of her continued employment.  

            Adhesion
contracts are not automatically or per se unconscionable, and there is nothing
per se unconscionable about arbitration agreements.  In re Lyon
Fin. Servs., 257 S.W.3d 228, 233 (Tex. 2008); In re AdvancePCS Health L.P., 172 S.W.3d 603, 608 (Tex. 2005).  The Texas Supreme Court has held that [t]he
principles of unconscionability do not negate a bargain because one party to
the agreement may have been in a less advantageous bargaining position.  Palm
Harbor Homes, 195 S.W.3d at 679.  Further, the Texas Supreme Court has held that
it is not unconscionable for Texas employers to offer at-will employees a
take-it-or-leave-it agreement that includes binding arbitration.  In re Halliburton
Co., 80 S.W.3d 566, 572 (Tex. 2002). 
The take-it-or-leave-it agreement in this case is very similar to that
in Halliburton; therefore, the
Agreement is not an unconscionable adhesion contract. 

            Absent
a duty to disclose, such as in a confidential or fiduciary relationship, an
agreement is not unconscionable or fraudulent merely because one party was not
informed as to the arbitration provisions. 
See In re Green Tree Servicing LLC, 275 S.W.3d 592 (Tex. App.Texarkana
2008, orig. proceeding); see Emerald
Tex., Inc. v. Peel, 920 S.W.2d 398, 40203 (Tex. App.Houston [1st Dist.] 1996,
no writ).  Here, there is no allegation
in this case that Nexion is in a fiduciary relationship with Martin; therefore,
Nexion had no duty to explain the Agreements provisions to her.  Even if Nexion were under a duty to disclose,
the Agreement informed Martin, as we have noted, that Nexion did not have
workers compensation insurance; that, as such, Martin, if injured on the job,
could sue for damages caused by Nexions negligence; and that Martin, to get Plan
benefits, agreed to arbitration and gave up the right to a jury trial for
wrongful discharge, for negligence, or to interpret the Agreement.

            As to Martins claims that Nexion failed to encourage her
to review the documents with an attorney, and disclose and explain the Plan,
the arbitration Agreement and Martins rights, the unambiguous language of the
Agreement directly contradicts her argument. 
The Agreement states, in part:

I
acknowledge and understand that by signing this Agreement I am giving up the
right to a jury trial on all of the claims covered by this Agreement in
exchange for eligibility for the Plans medical, disability, dismemberment,
death and burial benefits . . . .

 

            .
. . .

 

I acknowledge that I have carefully read this
Agreement, that I understand its terms, and that this is our entire agreement
on the subjects covered in this Injury Benefits Agreement . . . I am aware of
the consequences of signing this Agreement and, to the extent that I deem
necessary, I have consulted or will consult with an attorney.  Finally, I agree and acknowledge that signing
this Agreement is not a condition of my employment.

 

            The only
cases under Texas law in which an agreement was found procedurally
unconscionable involve situations in which one of the parties appears to have
been incapable of understanding the agreement. 
Fleetwood Enters., Inc. v. Gaskamp,
280 F.3d 1069, 1077 (5th Cir. 2002).  Under
the general rule, every person who has the capacity to enter into a contract[4]
is held to know what words were used in the contract, to know their meaning,
and to understand their legal effect.  Indem. Ins. Co. of N. Am. v. W.L. Macatee
& Sons, 129 Tex. 166, 101 S.W.2d 553, 556 (1937); In re Media Arts Group, 116 S.W.3d 900, 908 (Tex. App.Houston
[14th Dist.] 2003, orig. proceeding) (absent fraud, party to contract may not
successfully claim belief that provisions of contract were different from those
plainly set out in contract or that he or she did not understand language used);
Amouri v. Sw. Toyota, Inc., 20 S.W.3d
165, 169 (Tex. App.Texarkana 2000, pet. denied).  Moreover, a party to a written agreement is
charged as a matter of law with knowledge of its provisions . . . unless he can
demonstrate that he was tricked into its execution.  Town N.
Natl Bank v. Broaddus, 569 S.W.2d 489, 492 (Tex. 1978) (quoting Tex. Export Dev. v. Schleder, 519 S.W.2d
134, 139 (Tex. Civ. App.Dallas 1974, no writ)). 

            Here,
there is no evidence that Martin was incapable of reading or understanding the
Agreement; therefore, she is deemed by the law to have understood the
consequences of signing the Agreement, acknowledged that she was giving up her
right to jury trial in exchange for benefits under the Plan, and decided that
she would consult with an attorney if she deemed it necessary.  

            Martin also
contends that the Agreement was unconscionable because agreeing to the terms of
the Agreement was a condition of her employment.  On direct examination, she was asked, [W]ere
you asked to sign this [Agreement] form as well as some others to keep your job
at Nexion?  Martin responded, Yes.  However, the express terms of the Agreement
contradict Martins testimony.  The
Agreement unambiguously states, I agree and acknowledge that signing this
Agreement is not a condition of my employment.
(Emphasis added.) 

            Because
an employer has a general right under Texas law to discharge an at-will
employee, it cannot be unconscionable, without more, merely to premise
continued employment on acceptance of new or additional employment terms.  Halliburton,
80 S.W.3d at 572 (citing Smith v. H.E.
Butt Grocery Co., 18 S.W.3d 910, 912 (Tex. App.Beaumont 2000, pet. denied)
(rejecting argument that arbitration provision is unconscionable merely because
parties did not negotiate its terms)). 
In the only case Martin cites in support of her argument, Halliburton, 80 S.W.3d at 567, the Texas Supreme Court held that an arbitration
provision imposed as a condition of employment was not unconscionable.  In In
re Poly-America, L.P., 262 S.W.3d 337, 36061 (Tex. 2008), the court found
limited-liability provisions within the contract unenforceable, but upheld the
trial courts order compelling arbitration despite the agreement being a
condition of employment.  Based on the
analysis in Poly-America and Halliburton, even the imposition of an
arbitration provision as a condition of employment would not have violated
public policy.  See also DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.,
112 S.W.3d 854, 858 (Tex. App.Houston [14th Dist.] 2003, pet. denied) (to give
purpose and effect to written contracts, party may not justifiably rely on oral
representation directly contradicting unambiguous contract terms).

            The
Agreement is not procedurally unconscionable. 
But Martin claims also that it is substantively unconscionable.

            The
test for substantive unconscionability is whether, given the parties general
commercial background and the commercial needs of the particular trade or case,
the clause involved is so one-sided that it is unconscionable under the
circumstances existing when the parties made the contract.  Palm
Harbor Homes, Inc., 195 S.W.3d at 678 (quoting FirstMerit Bank, 52 S.W.3d at 757).  It is well-settled law that, alone, an employees
preinjury waiver of the right to sue under a nonsubscribers voluntary benefit
plan does not violate public policy.  See Halliburton, 80 S.W.3d at 567, 572; see also Poly-America, 262 S.W.3d at 36061. 
An agreement to arbitrate is not substantively unconscionable if the
employee did not waive any substantive rights and simply agrees to have those
rights determined in a different forum. Halliburton,
80 S.W.3d at 572 (citing Beauchamp v.
Great W. Life Assurance Co., 918 F.Supp. 1091, 1098 (E.D. Mich. 1996)).  Here, as in Halliburton, Martin did not waive her rights to bring suit against
Nexion; rather, she merely agreed to have those claims heard by an arbiter.  Therefore, the Agreement is not substantively
unconscionable.

            We
overrule Martins claims that the Agreement is unconscionable.

 

(3)        The
Agreement Is Supported by Adequate Consideration

 

            Martin also
argued that the Agreement was illusory due to a lack of mutual consideration,[5]
because Nexion could terminate or amend the Agreement at any time.[6]  We disagree. 

            Mutual
promises to submit employment disputes to arbitration are sufficient
consideration.  J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 228 (Tex. 2003).  An arbitration agreement is not illusory
unless one party can avoid its promise by amending or terminating the
arbitration provisions. Halliburton,
80 S.W.3d at 570.  In Halliburton, the Texas Supreme Court considered
and upheld an arbitration clause which provided that no amendment shall apply
to a Dispute of which the Sponsor [Halliburton] had actual notice on the date
of amendment and that termination shall not be effective until 10 days after
reasonable notice of termination is given to Employees or as to Disputes which
arose prior to the date of termination.  Id.
at 56970.

            Here,
the right to amend or terminate is similar to the right in Halliburton.  The Agreement
provided that Nexion reserved the right to amend, modify, or terminate the
Plan at any time.  The Agreement,
however, went further:

No amendment or termination of the Plan will
reduce the amount of any benefit then due and payable under the Plan to or with
respect to a participant in connection with an Injury occurring prior to the
date of such amendment or termination. 
If you have chosen to accept Plan benefits and [Nexion] ever amends
the Plan to reduce those benefits, then you will have an opportunity to revoke
your benefits election with respect to any later on-the-job injury.

 

Therefore, Nexions right to
amend or terminate the Plan does not deprive an employee of rights and benefits
already accrued under the Plan before the amendment or termination.  Id.  If the Plans benefits are ever reduced,
employees will have an opportunity to revoke their acceptance; if the Plan is
ever terminated, it will leave the employees with all of their common-law
rights against Nexion as a nonsubscriber. 
See id.; see also Tex. Labor Code
Ann. § 406.033(a) (Vernon 2006).[7]  Therefore, the Agreement is supported by
adequate consideration.

 

 

 

 

            For the
foregoing reasons, the Agreement to submit the parties dispute to arbitration
is binding, and we reverse the trial courts order denying arbitration and
remand the case to the trial court for further proceedings consistent with this
opinion.  See Meyer v. WMCO-GP, LLC,
211 S.W.3d 302, 308 (Tex. 2006).

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          June
17, 2010  

Date Decided:             July
7, 2010

 

 











[1]Martin
did not contest the existence and applicability of the arbitration provision at
trial.  Rather, Martin argued that the
arbitration provision was unenforceable and/or invalid.

 





[2]Here,
it is not argued that the attacks on the enforceability of the Agreement must
be arbitrated.  There are two types of challenges to an arbitration
provision:  (1) a specific
challenge to the validity of the arbitration agreement or clause, and (2) a
broader challenge to the entire contract, either on a ground that directly
affects the entire agreement, or on the ground that one of the contracts
provisions is illegal and renders the whole contract invalid.  Buckeye
Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 (2006); In re Labatt
Food Service, L.P., 279 S.W.3d 640 (Tex. 2009).  A court may determine
the first type of challenge, but a challenge to the validity of the contract as
a whole, and not just to the arbitration clause, must go to the
arbitrator.  Cardegna, 546 U.S.
at 44849; see Prima Paint Corp.
v. Flood & Conklin Mfg. Co., 388 U.S. 395, 40304 n.12 (1967) (claim of
fraud in inducement of arbitration clause itself may be adjudicated by court,
but court may not consider claim of fraud in inducement of contract
generally).  Similarly, arbitrators
generally must decide defenses that apply to the whole contract, while courts
decide defenses relating solely to the arbitration clause.  Perry Homes v. Cull, 258 S.W.3d
580, 589 (Tex. 2008); see also In re FirstMerit Bank, 52 S.W.3d
749, 756 (Tex. 2001) (defenses of unconscionability, duress, fraudulent
inducement, and revocation must specifically relate to arbitration part of
contract, not contract as whole, if they are to defeat arbitration; validity of
arbitration provision is separate issue from that of whole contract).  Because no claim is made that Martins
attacks on the Agreement must, themselves, be arbitrated, we do not address
such an issue.





[3]In
contrast, the word damages appears only once: 
when an employer does not have workers compensation insurance, an
employee injured on the job can sue his employer and recover damages if the
employers negligence caused the injury.





[4]There
are no allegations that Martin lacked the capacity to enter into a contract.





[5]Martin
also claimed that the illusory nature of the Agreement rendered it
unconscionable.

 





[6]Some
discussion at the hearing and in Martins brief implies that the validity of
the agreement is affected by whether Martin signed it during, or at the outset
of her employment with Nexion.  An
employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee received
notice of the employers arbitration policy and accepted it by continued
employment.  In re Dillard Dept Stores, Inc., 181 S.W.3d 370, 375 (Tex. App.
El Paso 2005, orig. proceeding) (per curiam) (citing Halliburton, 80 S.W.3d at 568). 
Here, it is undisputed that Martin knew of, read, and agreed to the
terms of the Agreement, including the arbitration clause.  We conclude that whether the Agreement was
signed before or during Martins employment is irrelevant because, as a matter
of law, neither Martins hiring nor her continued employment was consideration
for the Agreement.





[7]In
an action against an employer who does not have workers compensation insurance
coverage to recover damages for personal injuries or death sustained by an
employee in the course and scope of the employment, it is not a defense that:

                (1)           the employee was guilty of
contributory negligence; 

                (2)           the employee assumed the risk of
injury or death; or 

                (3)           the injury or death was caused by the
negligence of a fellow servant.