# NO. 12-18-00249-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOSEPH MARTEL,* *APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW NO. 2* |
| *FAYE COMTE AND STARR, SCHOENBRUN & COMTE, PLLC, APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Joseph M. Martel appeals the trial court's order denying his motion to compel arbitration in favor of Appellees Faye B. Comte and Starr Schoenbrun & Comte, PLLC (collectively Comte or the law firm). In two issues, Martel contends that the trial court abused its discretion in denying his motion to compel arbitration. We reverse and render.

## BACKGROUND

In October 2016, Martel hired Comte to represent him in a suit to modify the parent-child relationship. The parties signed an employment contract drafted by the law firm, which stated, in pertinent part, as follows:

### FEE DISPUTES

19.      Client is responsible for the careful review of each invoice from the Firm. Client agrees to notify the Firm within a ten-day (10) period, if Client has a question or dispute over any charges billed. Client will not be charged to discuss any questions Client has about the Firm's bill. If Client fails to notify Firm within ten (10) days of Client's receipt of each invoice, Client agrees that there is no dispute over its contents. The Firm will work with Client to reach an agreement to resolve any disputes. If Client does not raise a complaint about a bill within thirty-days (30) of the date of the bill, Client waives any right to complain about that bill in the future. The parties agree that any fee disputes are best handled immediately.

20.      In the event that the parties are unable to resolve a fee dispute, the parties agree to submit

the dispute to binding arbitration. This agreement is subject to binding arbitration pursuant to the terms . . . [and] conditions set forth in this agreement. There are advantages and disadvantages to binding arbitration. Advantages include: quick resolution of the controversy; privacy regarding the information presented; more control of the timing and availability of the presentation of information. Disadvantages include: the waiver of the right to a jury trial; responsibility for payment of the arbitrator's fee; fees for a court reporter if one is required.

(emphasis omitted)

According to Martel, during his initial consultation with Comte and prior to the law firm's filing the petition to modify, he informed Comte that Jeanie Weaver, a confidant of his former spouse, would be a key witness in the matter. During the months that followed, the law firm continued to represent Martel, who paid it approximately $89,000 in attorney's fees. In July 2017, the law firm withdrew from its representation of Martel, citing a conflict of interest based on its representation of Weaver.

Martel made a demand for arbitration to the law firm, by which he sought to recover the forfeiture of attorney's fees paid to it. However, the law firm declined to agree to submit the matter to arbitration. Thereafter, Martel filed the instant suit seeking to compel arbitration. Following a hearing on the matter, the trial court denied Martel's motion to compel. Upon request, the trial court made written findings of fact and conclusions of law, and this appeal followed.

## MOTION TO COMPEL ARBITRATION

In his first and second issues, Martel argues that the trial court erred in denying his motion to compel arbitration. Specifically, Martel argues that the trial court incorrectly found that (1) his fee forfeiture claim is not a "fee dispute" under the arbitration clause and (2) he failed to meet a condition precedent to the arbitration clause.

### Standard of Review and Governing Law

We review a trial court's order denying a motion to compel arbitration for abuse of discretion. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009). We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo. *Id.*

The Federal Arbitration Act (FAA) generally governs arbitration provisions in contracts involving interstate commerce. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011). Under the FAA, a presumption exists favoring agreements to arbitrate. *In re FirstMerit Bank, N.A.*, 52 S.W.3d

2

749, 753 (Tex. 2001). A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and that the claims at issue fall within the scope of that agreement. ***Venture Cotton Coop. v. Freeman***, 435 S.W.3d 222, 227 (Tex. 2014). If the party seeking to compel arbitration meets this burden, the burden then shifts, and to avoid arbitration, the party opposing it must prove an affirmative defense to the provision's enforcement, such as waiver. ***Id.*** "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." ***In re Serv. Corp. Intern.***, 85 S.W.3d 171, 174 (Tex. 2002). Whether the claims in dispute fall within the scope of a valid arbitration agreement and whether a party waived its right to arbitrate are questions of law, which are reviewed de novo. ***Labatt Food Serv., L.P.***, 279 S.W.3d at 642–43; ***Perry Homes v. Cull***, 258 S.W.3d 580, 598 n.102 (Tex. 2008).

Arbitration is a contractual proceeding by which the parties to a controversy, by consent, submit that controversy to an arbitrator for a determination thereon. *See **In re C.A.K.***, 155 S.W.3d 554, 559 (Tex. App.–San Antonio 2004, pet. denied). Thus, the determination as to whether an arbitration clause is enforceable is a matter of contractual interpretation. ***Id.***

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. ***Coker v. Coker***, 650 S.W.2d 391, 393 (Tex. 1983); *see also **Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.***, 907 S.W.2d 517, 520 (Tex. 1995). To achieve this objective, we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *See **Coker***, 650 S.W.2d at 393; ***CBI Indus.***, 907 S.W.2d at 520. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *See **Coker***, 650 S.W.2d at 393; ***CBI Indus.***, 907 S.W.2d at 520; ***Myers v. Gulf Coast Minerals Mgmt. Corp.***, 361 S.W.2d 193, 196 (Tex. 1962).

If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and the court will construe the contract as a matter of law. ***Coker***, 361 S.W.2d at 393. The interpretation of an unambiguous contract is a question of law, which we review de novo. *See **MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.***, 995 S.W.2d 647, 650 (Tex. 1999). Ambiguity does not arise simply because the parties advance conflicting

interpretations of the contract; rather, for an ambiguity to exist, both interpretations must be reasonable. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000).

In interpreting a contract, we must presume that the parties thereto intended every clause to have some effect; therefore, we consider each part of the document with every other part of the document so that the effect and meaning of one part on any other part may be determined. *See Birnbaum v. SWEPI LP*, 48 S.W.3d 254, 257 (Tex. App.–San Antonio 2001, pet. denied). Moreover, we give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used such terms in a technical or different sense. *Id.* Finally, we enforce an unambiguous agreement as written. *Id.* We are not permitted to rewrite an agreement to mean something it did not. *Id.* We cannot change the contract simply because we or one of the parties comes to dislike its provisions or thinks that something else is needed in it. *Id.* Parties to a contract are masters of their own choices and are entitled to select what terms and provisions to include in or omit from a contract. *Id.*

Here, while neither party argues that the agreement is ambiguous, each interprets its language differently, and neither concedes that its interpretation of the relevant passages is any less reasonable than the other party's interpretation of the same. Based on our reading of the relevant sections of the agreement, we conclude that they are not ambiguous.

**"Fee Dispute"**

In the instant case, the parties do not dispute the existence of a valid arbitration clause. Rather, Martel's first issue pertains to the trial court's conclusion that "the basis for [Martel's] requested fee forfeiture is not within the scope of the arbitration provision found in the Agreement." The parties agreed to arbitrate "fee dispute[s]." Because this term is not defined in the contract, we consider its ordinary meaning. *See Birnbaum*, 48 S.W.3d at 257. "Fee" means "a sum paid or charged for a service." *Fee*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2011). "Dispute" means "to call into question" or "to contend over." *Dispute*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2011). Thus, the plain meaning of "fee dispute" is a broad one, encompassing any contentions over the sum charged to Martell by the law firm for services rendered.

We next consider the common meaning of "fee dispute" in light of the contract as a whole so as to harmonize the provisions and ascertain the true intentions of the parties. *See Coker*, 650 S.W.2d at 393. In so doing, we are mindful of the "FEE DISPUTE" heading, which precedes

4

Paragraphs 19 through 22. We further are mindful of Paragraph 19's discussion of the client's responsibility to review each invoice and raise questions or disputes over any charges billed within a certain timeframe. From our reading of this paragraph, it is apparent that the fee disputes referenced in Paragraph 19 are of the sort wherein the client contends that he was billed improperly, e.g., billed at the incorrect hourly rate or billed an exorbitant amount of time for listed items. Under the common meaning discussed above, what Paragraph 19 describes undoubtedly is a type of "fee dispute." However, in our reading of the contract as a whole, there is no language that demonstrates that the parties intended to limit the arbitrable claims in Paragraph 20 to this type of fee dispute alone. Nor does the application of the broader, ordinary meaning of "fee dispute" in Paragraph 20 render meaningless the parties' expressed intent to resolve in a prompt manner the type of fee dispute discernable from a client's timely review of an invoice.

In Martel's petition to compel arbitration, he contends that the law firm's actions constitute a breach of its fiduciary duty to him and require it to forfeit all fees he paid to them. The law firm argues that Martel's cause of action is for breach of fiduciary duty rather than a "fee dispute." However, in determining whether a party's claim falls within the scope of an arbitration agreement, "courts focus on the factual allegations and not the legal causes of action asserted." ***Henry v. Cash Biz, LP***, 551 S.W.3d 111, 115 (Tex. 2018).

Based on our reading of the entirety of the contract at issue, we conclude that the ordinary meaning of "fee dispute" should be applied to the arbitration clause and there is no indication that the parties intended to limit the scope of the arbitrable claims only to certain types of fee disputes, such as are referenced in Paragraph 19. In considering Martel's factual allegations, we are mindful that the "presumption in favor of arbitration is so compelling that a court should not deny arbitration unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." ***Id.*** In this case, Martel contends that the law firm should be required to forfeit the fees he paid to it because it had a conflict of interest, which should have precluded its undertaking to represent him. We conclude that the factual allegations in this case constitute a "fee dispute" under that term's ordinary meaning.

**Condition Precedent**

The trial court also concluded that Martel "failed to meet the condition precedent of the Agreement by failing to provide notice as required." To defeat a motion to compel arbitration, any defense raised must specifically relate to the arbitration portion of the contract, not the contract

5

as a whole. *See **UBS Fin. Servs., Inc. v. Branton***, 241 S.W.3d 179, 184 (Tex. App.–Fort Worth 2007, no pet.). The breach of a condition precedent can affect the enforceability of an arbitration clause if the condition attaches to that clause. *Cf. **Dallas Cardiology Associates, P.A. v. Mallick***, 978 S.W.2d 209, 212 (Tex. App.–Texarkana 1998, pet. denied).

Conditions precedent to an obligation to perform under a contract are those acts or events occurring subsequent to the making of a contract that must occur before there is a right to immediate performance and before there is a breach of a contractual duty. *See **Beacon Nat'l Ins. Co. v. Glaze***, 114 S.W.3d 1, 2 (Tex. App.–Tyler 2003, pet. denied) (citing ***Hohenberg Bros. Co. v. George E. Gibbons & Co.***, 537 S.W.2d 1, 3 (Tex.1976)). To determine whether a condition precedent exists, the intention of the parties must be ascertained by looking to the contract as a whole. *See **Criswell v. European Crossroads Shopping Ctr., Ltd.***, 792 S.W.2d 945, 948 (Tex. 1990). In construing a contract, forfeiture by finding a condition precedent is to be avoided when another reasonable reading of the contract is possible, when the intent of the parties is doubtful, or when a condition would impose an impossible or absurd result. *Id.*

Here, the law firm argues that the timing provisions in Paragraph 19 are an unsatisfied condition precedent. Paragraph 19 sets forth that Martel (1) must notify the law firm within ten days if he has a question about or a dispute over any charges billed in the invoice, (2) agrees that there is no dispute over the contents of the invoice if he fails to so notify, and (3) waives his right to complain about a bill if he does not raise a complaint about it within thirty days from the date of the bill.

Martel argues that these are questions to be resolved by the arbitrator. However, the question we must consider is whether the parties intended that these conditions attach to the arbitration clause. Based on our reading of Paragraph 19 in light of the contract as a whole, we note that these timing provisions relate to billing disputes, examples of which are mentioned in our consideration of Martel's first issue. The contract does not provide that these timing provisions attach or relate to the arbitration clause or to the broader ordinary meaning of the term "fee disputes" as discussed above. Therefore, we conclude that Martel did not fail to satisfy a condition precedent to arbitration.

## Summation

In sum, we have concluded that (1) the factual allegations Martel raised fall within the scope of the parties' arbitration clause and (2) Martel did not fail to satisfy a condition precedent

6

to arbitration. As a result, we hold that the trial court abused its discretion in denying Martel's motion to compel arbitration. Martel's first and second issues are sustained.

### DISPOSITION

Having sustained Martel's first and second issues, we *reverse* the trial court's order denying Martel's motion to compel arbitration and *render* an order granting this motion. The cause is *remanded* to the trial court and *stayed* pending completion of arbitration.

JAMES T. WORTHEN
Chief Justice

Opinion delivered March 20, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 20, 2019**

**NO. 12-18-00249-CV**

**JOSEPH MARTEL,**
Appellant
V.
**FAYE COMTE AND STARR, SCHOENBRUN & COMTE, PLLC,**
Appellee

Appeal from the County Court at Law No. 2
of Smith County, Texas (Tr.Ct.No. 67952-A)

THIS CAUSE came to be heard on the oral arguments, appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the order of the court below, it is ORDERED, ADJUDGED and DECREED by this court that we *reverse* the trial court's order denying Martel's motion to compel arbitration and *render* an order granting this motion. IT IS FURTHER ORDERED that this cause be *remanded* to the trial court and *stayed* pending completion of arbitration, in accordance with the opinion of this court; and that all costs of this appeal are hereby adjudged against the Appellee, **FAYE COMTE AND STARR, SCHOENBRUN & COMTE, PLLC,** for which execution may issue; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*