

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-10-00017-CV

_____

NEXION HEALTH AT OMAHA, INC., D/B/A OMAHA HEALTHCARE
CENTER, Appellant

V.

VIRGIE M. MARTIN, Appellee

On Appeal from the 276th Judicial District Court
Morris County, Texas
Trial Court No. 24,199

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Virgie M. Martin was injured while working for her employer, Nexion Health at Omaha, Inc., d/b/a Omaha Healthcare Center (Nexion). Martin sued Nexion for negligence. Nexion denied the claims and moved to compel arbitration of Martin's claims under the terms of its Employee Accident Plan (Plan). The trial court denied the motion to compel arbitration.

On appeal, Nexion argues that the trial court abused its discretion by failing to enforce the arbitration clause. We reverse the trial court's order denying arbitration because (1) the Injury Benefits Agreement (Agreement) was not fraudulently induced, (2) the Agreement is not unconscionable, and (3) the Agreement is supported by adequate consideration.

Nexion does not subscribe to the Texas Workers' Compensation System; instead, it provides benefits for on-the-job injuries under its own Plan. Employees could opt whether to participate in the Plan by executing the Agreement, which incorporated the Plan by reference. The Agreement includes mandatory binding arbitration "for any and all disputes arising out of a Bodily Injury, Accident . . . [and] any claim of negligence brought by an [e]mployee . . .," as well as "any claim for benefits under the Plan . . ., any claim for wrongful discharge, any claim of negligence brought by an employee, and any claim or action relating to the interpretation or enforcement" of the Agreement. Under the terms of the Plan, Nexion reserved the "right to amend, modify, or terminate the Plan at any time." Nexion employees could either accept and "participate in and receive benefits under the Plan" or they could refuse to participate in the Plan

2

with the understanding that they would "not receive any benefits (including payment of [their] medical expenses) in the event of an on-the-job injury."

On February 22, 2007, believing that, if she declined to participate in the Plan, she would have no legal remedies or recourse if injured on the job, Martin executed the Agreement, agreeing to the terms of the Plan. Martin testified that she had to sign the Agreement in order to keep her job, a claim that Nexion denies and the express terms of the Agreement contradict. She testified that she read the Agreement, but did not have an opportunity to review it with an attorney.

About two years later, in January 2009, Martin sustained a work-related injury and filed suit against Nexion, alleging that Nexion's negligence proximately caused her injuries. Nexion denied the allegations of Martin's petition and moved to compel arbitration under the terms of the Plan.

In response to the motion to compel arbitration, Martin argued that the arbitration Agreement was invalid or unenforceable because it was a misleading and incorrect statement of the law, lacked consideration, was unconscionable and unenforceable because the Plan's benefits were substantially less generous than those available under the Texas Workers' Compensation Act, and was an adhesion contract where Nexion had superior knowledge and bargaining power.

Nexion argued that the Agreement does not violate public policy, that the Agreement was supported by consideration in that both parties gave up their right to a jury trial, that Martin received medical treatment, and that she received $23,531.46 in medical benefits and wage

replacement benefits under the terms of the Plan. Martin does not deny receiving or accepting those benefits. Nexion argued that, by accepting the benefits of the Agreement, Martin acquiesced to the Agreement's provisions, including mandatory arbitration.

The trial court denied the motion to compel arbitration. No findings of fact or conclusions of law were requested or filed.

In an accelerated appeal of an interlocutory order denying a motion to compel arbitration, we review de novo the trial court's legal determinations and review its factual determinations under a "no evidence" standard. *Trammell v. Galaxy Ranch School, L.P.*, *(In re Trammell)*, 246 S.W.3d 815, 820 (Tex. App.—Dallas 2008, orig. proceeding); *Dallas Cardiology Assocs. v. Mallick*, 978 S.W.2d 209, 212 (Tex. App.—Texarkana 1998, pet. denied). In reviewing the trial court's factual determinations, we must credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *Mallick*, 978 S.W.2d at 212 (citing *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005)). However, when the facts relevant to the arbitration issue are not disputed, we are presented only with issues of law, and therefore, review de novo the trial court's order. *Trammell*, 246 S.W.3d at 820. A "no evidence" point requires the appellate court to consider only the evidence and inferences tending to support the finding under attack and to disregard all evidence and inferences to the contrary. *Id.*; *Wetzel v. Sullivan, King & Sabom, P.C.*, 745 S.W.2d 78, 79 (Tex. App.—Houston [1st Dist.] 1988, no writ) (citing *Garza v. Alviar*,

4

395 S.W.2d 821, 823 (Tex. 1965)). Because no findings of fact or conclusions of law were filed, we must uphold the trial court's decision if there is sufficient evidence to support it on any legal theory asserted. *Wetzel*, 745 S.W.2d at 81.

The party seeking arbitration has the initial burden to establish his or her right to the remedy under the contract; that is, to establish that a valid arbitration agreement exists. *Cantella Co. v. Goodwin*, 924 S.W.2d 943, 945 (Tex. 1996) (per curiam); *City of Alamo v. Garcia*, 878 S.W.2d 664, 665 (Tex. App.—Corpus Christi 1994, no writ). In applying the law to the Federal Arbitration Act, Texas courts have concluded that, once the existence of an arbitration agreement has been established, then a presumption attaches favoring arbitration. *Mallick*, 978 S.W.2d at 212. At this point, the burden of proof shifts to the party seeking to avoid the arbitration agreement to show that some grounds exist in law or in equity for the revocation, invalidation, or avoidance of the contract. *Id.* Such grounds could include fraud, waiver, unconscionability, or that the dispute was not within the scope of the agreement. *Id.* This is a proper placement of the burden under Texas law, given the strong Texas presumption in favor of arbitration. *See Brazoria County v. Knutson*, 142 Tex. 172, 176 S.W.2d 740, 743 (1943); *Wetzel*, 745 S.W.2d at 81.

In determining whether to compel arbitration, the court must decide two issues: (1) whether a valid, enforceable arbitration agreement exists, and (2) if so, whether the claims asserted fall within the scope of the agreement. *BDO Seidman v. Miller*, 949 S.W.2d 858, 860 (Tex. App.—Austin 1997, writ dism'd w.o.j.); *Nationwide of Fort Worth, Inc. v. Wigington*, 945

5

S.W.2d 883, 884 (Tex. App.—Waco 1997, writ dism'd w.o.j.). The court has no discretion and must compel arbitration if the answer to both questions is affirmative. *Merrill Lynch, Pierce, Fenner & Smith v. Eddings*, 838 S.W.2d 874, 878 (Tex. App.—Waco 1992, writ denied). Doubts regarding the scope of arbitration agreements are resolved in favor of arbitration. *Id*. at 880.

In this case, neither party disputes that the Federal Arbitration Act governs the Agreement in dispute, and Martin does not dispute that the Agreement existed or that her claims are covered by it if the arbitration clause is valid and enforceable.[1] Therefore, the trial court was required to compel arbitration unless Martin proved that the Agreement was invalid or unenforceable. *See Canatella Co.*, 924 S.W.2d at 944. The trial court's order in the underlying case does not specify the grounds for denying arbitration. Because an order denying arbitration must be upheld if it is proper on any basis considered by the trial court, we will address all of Martin's defenses to the Agreement. *See Garcia*, 878 S.W.2d at 665. At trial, Martin argued that the arbitration clause was unenforceable because it was misleading, unconscionable, and illusory for lack of mutual consideration.[2] We address these arguments in turn.

---

[1]Martin did not contest the existence and applicability of the arbitration provision at trial. Rather, Martin argued that the arbitration provision was unenforceable and/or invalid.

[2]Here, it is not argued that the attacks on the enforceability of the Agreement must be arbitrated. There are two types of challenges to an arbitration provision: (1) a *specific* challenge to the validity of the arbitration agreement or clause, and (2) a broader challenge to the entire contract, either on a ground that directly affects the entire agreement, or on the ground that one of the contract's provisions is illegal and renders the whole contract invalid. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006); *In re Labatt Food Service, L.P.*, 279 S.W.3d 640 (Tex. 2009). A court may determine the first type of challenge, but a challenge to the validity of the contract as a whole, and not just to the arbitration clause, must go to the arbitrator. *Cardegna*, 546 U.S. at 448–49; *see Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 n.12 (1967) (claim of fraud in inducement of arbitration clause itself may be

6

*(1)    The Agreement Was Not Fraudulently Induced*

At trial, Martin argued that the language of the option not to participate in the Plan was misleading "on its face" and that it misled her into believing that, if she rejected the Plan, she would not receive any benefits and would have no recourse or remedies if she were injured on the job.   She asserted that she would not have agreed to participate in the Plan had she known that opting not to participate in the Plan would enable her to sue Nexion in a court of law for any on-the-job injuries she sustained.   Because a claim that a contract term is "misleading" does not set up a defense to the contract, this point appears to claim, if anything, fraud in the inducement.

To prove fraudulent inducement, Martin had to show:   (1) that Nexion made a material misrepresentation, (2) that it was either known to be false when made or was asserted recklessly without knowledge of its truth, and (3) that it was intended to be acted on, was relied on, and caused injury.   *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).   The issue here is whether the option not to participate is a misrepresentation.

Courts cannot determine the meaning of a contract's terms without examining them in the context of the entire Agreement.   *See Tower Contracting Co. v. Flores*, 157 Tex. 297, 302 S.W.2d 396, 399 (1957) (contractual meaning not derived from piecemeal portions of contract); *see also*

---

adjudicated by court, but court may not consider claim of fraud in inducement of contract generally).   Similarly, arbitrators generally must decide defenses that apply to the whole contract, while courts decide defenses relating solely to the arbitration clause.   *Perry Homes v. Cull*, 258 S.W.3d 580, 589 (Tex. 2008); *see also In re FirstMerit Bank*, 52 S.W.3d 749, 756 (Tex. 2001) (defenses of unconscionability, duress, fraudulent inducement, and revocation must specifically relate to arbitration part of contract, not contract as whole, if they are to defeat arbitration; validity of arbitration provision is separate issue from that of whole contract).   Because no claim is made that Martin's attacks on the Agreement must, themselves, be arbitrated, we do not address such an issue.

*Crawford v. Pullman, Inc.*, 630 S.W.2d 377, 379–80 (Tex. App.—Houston [14th Dist.] 1982, no writ).

Here, the Agreement is a mere two pages long, and an employee may choose either of the following two options:

I accept this opportunity to participate in and receive benefits under the Plan.

OR

I reject this opportunity to participate in the Plan and understand that I will not receive any benefits (including payment of my medical expenses) in the event of an on-the-job injury.

Other than the option not to participate, the word "benefit" or "benefits" appears five times in the Agreement,[3] and every time, it directly references the Plan as the source of the benefits:

1. "Nature of Injury Benefit Plan Payments"
2. "Plan benefit payments are not an admission of liability . . . by the Company."
3. ". . . any claim for benefits under the Plan . . ."
4. ". . . the Plan's medical, disability, dismemberment, death and burial benefits."
5. "I accept this opportunity to participate in and receive benefits under the Plan."

Specifically, the option to participate in the Plan directly references benefits "under the Plan" and that sentence is located immediately above the option to reject participation. The Agreement's

---

[3]In contrast, the word "damages" appears only once: "when an employer does not have workers' compensation insurance, an employee injured on the job can sue his employer and recover damages if the employer's negligence caused the injury."

8

text does not suggest that "benefits" in the rejection clause should mean anything other than "benefit" or "benefits" as used in other places in the Agreement, that is, "benefits under the Plan."

Also, the Agreement plainly informed Martin that (a) Nexion did not have Texas workers' compensation insurance, (b) "when an employer does not have workers' compensation insurance, an employee injured on the job can sue his employer and recover damages if the employer's negligence caused the injury," and (c) in exchange for the Plan's benefits, the signor agrees to binding arbitration for, and is "giving up the right to a jury trial on all of the claims" for, "wrongful discharge, any claim of negligence brought by an employee, and any claim or action relating to the interpretation or enforcement of [the Agreement]." Those parts of the Agreement, and the Agreement in general, serve to supply meaning to the word "benefits" as used in the rejection clause.

When read in the context of the entire Agreement, the phrase "I . . . understand that I will not receive any benefits (including payment of my medical expenses) in the event of an on-the-job injury" unambiguously refers to benefits under the Plan, rather than all possible benefits, damages, or other legal remedies. Therefore, the option to reject is neither misleading nor a material misrepresentation.

*(2)     The Agreement Is Not Unconscionable*

Martin also argued that the Agreement was unenforceable because it was unconscionable. Unconscionable contracts are not enforceable under Texas law. *In re Poly-America, L.P.*, 262

9

S.W.3d 337, 348 (Tex. 2008). However, according to the Texas Supreme Court, arbitration agreements are not inherently unconscionable. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 678 (Tex. 2006). "Because the law favors arbitration, the party opposing arbitration bears the burden to prove unconscionability." *TMI, Inc. v. Brooks*, 225 S.W.3d 783, 792 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding) (citing *FirstMerit Bank*, 52 S.W.3d at 756).

The law recognizes two classes of unconscionability, each of which we will address. "Procedural unconscionability" refers to the fairness of the circumstances surrounding adoption of the arbitration provision, whereas "substantive unconscionability" refers to the general fairness of the arbitration provision itself. *Palm Harbor Homes*, 195 S.W.3d at 677.

The Agreement was not procedurally unconscionable.

At trial, Martin argued that the Agreement was unconscionable because it was an adhesion contract in that Nexion had superior knowledge, because Nexion failed to explain the Plan, because Nexion failed to disclose to Martin her right to sue Nexion as a nonsubscriber to workers' compensation, because Nexion failed to disclose the consequences of agreeing to binding arbitration, because Nexion did not encourage her to consult with an attorney before agreeing to the terms of the Agreement, and because agreeing to participate in the Plan was a condition of her continued employment.

"Adhesion contracts are not automatically or per se unconscionable, and there is nothing per se unconscionable about arbitration agreements." *In re Lyon Fin. Servs.*, 257 S.W.3d 228,

233 (Tex. 2008); *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 608 (Tex. 2005). The Texas Supreme Court has held that "[t]he principles of unconscionability do not negate a bargain because one party to the agreement may have been in a less advantageous bargaining position." *Palm Harbor Homes*, 195 S.W.3d at 679. Further, the Texas Supreme Court has held that it is not unconscionable for Texas employers to offer at-will employees a take-it-or-leave-it agreement that includes binding arbitration. *In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002). The take-it-or-leave-it agreement in this case is very similar to that in *Halliburton*; therefore, the Agreement is not an unconscionable adhesion contract.

Absent a duty to disclose, such as in a confidential or fiduciary relationship, an agreement is not unconscionable or fraudulent merely because one party was not informed as to the arbitration provisions. *See In re Green Tree Servicing LLC*, 275 S.W.3d 592 (Tex. App.—Texarkana 2008, orig. proceeding); *see Emerald Tex., Inc. v. Peel*, 920 S.W.2d 398, 402–03 (Tex. App.—Houston [1st Dist.] 1996, no writ). Here, there is no allegation in this case that Nexion is in a fiduciary relationship with Martin; therefore, Nexion had no duty to explain the Agreement's provisions to her. Even if Nexion were under a duty to disclose, the Agreement informed Martin, as we have noted, that Nexion did not have workers' compensation insurance; that, as such, Martin, if injured on the job, could sue for damages caused by Nexion's negligence; and that Martin, to get Plan benefits, agreed to arbitration and gave up the right to a jury trial for wrongful discharge, for negligence, or to interpret the Agreement.

11

As to Martin's claims that Nexion failed to encourage her to review the documents with an attorney, and disclose and explain the Plan, the arbitration Agreement and Martin's rights, the unambiguous language of the Agreement directly contradicts her argument. The Agreement states, in part:

> I acknowledge and understand that by signing this Agreement I am giving up the right to a jury trial on all of the claims covered by this Agreement in exchange for eligibility for the Plan's medical, disability, dismemberment, death and burial benefits . . . .
>
>     . . . .
>
> I acknowledge that I have carefully read this Agreement, that I understand its terms, and that this is our entire agreement on the subjects covered in this Injury Benefits Agreement . . . I am aware of the consequences of signing this Agreement and, to the extent that I deem necessary, I have consulted or will consult with an attorney. Finally, I agree and acknowledge that signing this Agreement is not a condition of my employment.

"The only cases under Texas law in which an agreement was found procedurally unconscionable involve situations in which one of the parties appears to have been incapable of understanding the agreement." *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir. 2002). Under the general rule, every person who has the capacity to enter into a contract[4] is held to know what words were used in the contract, to know their meaning, and to understand their legal effect. *Indem. Ins. Co. of N. Am. v. W.L. Macatee & Sons*, 129 Tex. 166, 101 S.W.2d 553, 556 (1937); *In re Media Arts Group*, 116 S.W.3d 900, 908 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (absent fraud, party to contract may not successfully claim belief that

---

[4]There are no allegations that Martin lacked the capacity to enter into a contract.

provisions of contract were different from those plainly set out in contract or that he or she did not understand language used); *Amouri v. Sw. Toyota, Inc*., 20 S.W.3d 165, 169 (Tex. App.—Texarkana 2000, pet. denied). Moreover, "a party to a written agreement is charged as a matter of law with knowledge of its provisions . . . unless he can demonstrate that he was tricked into its execution." *Town N. Nat'l Bank v. Broaddus*, 569 S.W.2d 489, 492 (Tex. 1978) (quoting *Tex. Export Dev. v. Schleder*, 519 S.W.2d 134, 139 (Tex. Civ. App.—Dallas 1974, no writ)).

Here, there is no evidence that Martin was incapable of reading or understanding the Agreement; therefore, she is deemed by the law to have understood the consequences of signing the Agreement, acknowledged that she was giving up her right to jury trial in exchange for benefits under the Plan, and decided that she would consult with an attorney if she deemed it necessary.

Martin also contends that the Agreement was unconscionable because agreeing to the terms of the Agreement was a condition of her employment. On direct examination, she was asked, "[W]ere you asked to sign this [Agreement] form as well as some others to keep your job at Nexion?" Martin responded, "Yes." However, the express terms of the Agreement contradict Martin's testimony. The Agreement unambiguously states, "I agree and acknowledge that signing this Agreement is *not* a condition of my employment." (Emphasis added.)

Because an employer has a general right under Texas law to discharge an at-will employee, it cannot be unconscionable, without more, merely to premise continued employment on acceptance of new or additional employment terms. *Halliburton*, 80 S.W.3d at 572 (citing *Smith*

13

*v. H.E. Butt Grocery Co.*, 18 S.W.3d 910, 912 (Tex. App.—Beaumont 2000, pet. denied) (rejecting argument that arbitration provision is unconscionable merely because parties did not negotiate its terms)). In the only case Martin cites in support of her argument, *Halliburton*, 80 S.W.3d at 567, the Texas Supreme Court held that an arbitration provision imposed as a condition of employment was not unconscionable. In *In re Poly-America, L.P.*, 262 S.W.3d 337, 360–61 (Tex. 2008), the court found limited-liability provisions within the contract unenforceable, but upheld the trial court's order compelling arbitration despite the agreement being a condition of employment. Based on the analysis in *Poly-America* and *Halliburton*, even the imposition of an arbitration provision as a condition of employment would not have violated public policy. *See also DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (to give purpose and effect to written contracts, party may not justifiably rely on oral representation directly contradicting unambiguous contract terms).

The Agreement is not procedurally unconscionable. But Martin claims also that it is substantively unconscionable.

"The test for substantive unconscionability is whether, 'given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract.'" *Palm Harbor Homes, Inc.*, 195 S.W.3d at 678 (quoting *FirstMerit*

14

*Bank*, 52 S.W.3d at 757).   It is well-settled law that, alone, an employee's preinjury waiver of the right to sue under a nonsubscriber's voluntary benefit plan does not violate public policy.  *See Halliburton,* 80 S.W.3d at 567, 572; *see also Poly-America*, 262 S.W.3d at 360–61.   An agreement to arbitrate is not substantively unconscionable if the employee did not waive any substantive rights and simply agrees to have those rights determined in a different forum. *Halliburton*, 80 S.W.3d at 572 (citing *Beauchamp v. Great W. Life Assurance Co.*, 918 F.Supp. 1091, 1098 (E.D. Mich. 1996)).   Here, as in *Halliburton*, Martin did not waive her rights to bring suit against Nexion; rather, she merely agreed to have those claims heard by an arbiter. Therefore, the Agreement is not substantively unconscionable.

We overrule Martin's claims that the Agreement is unconscionable.

*(3)      The Agreement Is Supported by Adequate Consideration*

Martin also argued that the Agreement was illusory due to a lack of mutual consideration,[5] because Nexion could terminate or amend the Agreement at any time.[6]   We disagree.

Mutual promises to submit employment disputes to arbitration are sufficient consideration. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003).   An arbitration agreement is

---

[5]Martin also claimed that the illusory nature of the Agreement rendered it unconscionable.

[6]Some discussion at the hearing and in Martin's brief implies that the validity of the agreement is affected by whether Martin signed it during, or at the outset of her employment with Nexion.   An employer may enforce an arbitration agreement entered into *during* an at-will employment relationship if the employee received notice of the employer's arbitration policy and accepted it by continued employment.   *In re Dillard Dep't Stores, Inc.*, 181 S.W.3d 370, 375 (Tex. App.— El Paso 2005, orig. proceeding) (per curiam) (citing *Halliburton*, 80 S.W.3d at 568).   Here, it is undisputed that Martin knew of, read, and agreed to the terms of the Agreement, including the arbitration clause.   We conclude that whether the Agreement was signed before or during Martin's employment is irrelevant because, as a matter of law, neither Martin's hiring nor her continued employment was consideration for the Agreement.

15

not illusory unless one party can avoid its promise by amending or terminating the arbitration provisions. *Halliburton*, 80 S.W.3d at 570. In *Halliburton*, the Texas Supreme Court considered and upheld an arbitration clause which provided that "no amendment shall apply to a Dispute of which the Sponsor [Halliburton] had actual notice on the date of amendment" and that "termination shall not be effective until 10 days after reasonable notice of termination is given to Employees or as to Disputes which arose prior to the date of termination." *Id.* at 569–70.

Here, the right to amend or terminate is similar to the right in *Halliburton.* The Agreement provided that Nexion reserved "the right to amend, modify, or terminate the Plan at any time." The Agreement, however, went further:

> No amendment or termination of the Plan will reduce the amount of any benefit then due and payable under the Plan to or with respect to a participant in connection with an Injury occurring prior to the date of such amendment or termination. If you have chosen to "accept" Plan benefits and [Nexion] ever amends the Plan to reduce those benefits, then you will have an opportunity to revoke your benefits election with respect to any later on-the-job injury.

Therefore, Nexion's right to amend or terminate the Plan does not deprive an employee of rights and benefits already accrued under the Plan before the amendment or termination. *Id.* If the Plan's benefits are ever reduced, employees will have an opportunity to revoke their acceptance; if the Plan is ever terminated, it will leave the employees with all of their common-law rights against

Nexion as a nonsubscriber. *See id.*; *see also* TEX. LABOR CODE ANN. § 406.033(a) (Vernon 2006).[7]  Therefore, the Agreement is supported by adequate consideration.

For the foregoing reasons, the Agreement to submit the parties' dispute to arbitration is binding, and we reverse the trial court's order denying arbitration and remand the case to the trial court for further proceedings consistent with this opinion.  *See Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 308 (Tex. 2006).

Josh R. Morriss, III
Chief Justice

Date Submitted:    June 17, 2010
Date Decided:    July 7, 2010

---

[7]In an action against an employer who does not have workers' compensation insurance coverage to recover damages for personal injuries or death sustained by an employee in the course and scope of the employment, it is not a defense that:

    (1)      the employee was guilty of contributory negligence;

    (2)      the employee assumed the risk of injury or death; or

    (3)      the injury or death was caused by the negligence of a fellow servant.